[No. 5,770.—In Bank.]

# W. S. CHAPMAN v. THOMAS QUINN.

PATENT — PRE-EMPTION — CONSTRUCTIVE TRUST — EQUITY. — Equitable rights of persons claiming under the pre-emption laws have been protected by the courts against a legal title acquired by other parties by means of the introduction by others of false testimony, or other imposition upon the officers of the land department, or by the misconstruction of the law by those officers upon an admitted state of facts. But in all of such cases the party thus protected had connected himself with the title of the Government, and thereby acquired some right, which in equity entitled him to protection.

ID.—ID.—ID.—ID.—It is essential to the right of a party to enter land under the pre-emption law, that proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district.

ID.—ID.—ID.—RULES OF THE LAND OFFICE.—The commissioner of the general land office, subject to the supervision of the Secretary of the Interior, may make rules and regulations, not inconsistent with law, for the government of the various officers in the sale and disposal of the public lands, including rules for the making of the required proof and the trial of pre-emption contests; and such rules and regulations (at least where they they are reasonable) will not be interfered with by the courts.

ID.—ID.—ID.—ID.—A rule forbidding the receiving or filing by the register and receiver of a declaratory statement for a tract of land, after the inauguration of a contest between other parties for the same land, is not so unreasonable as to justify an interference by the courts; and a party who, by reason of such rule, has been prevented by the register and receiver from filing a declaratory statement, and from making proofs of his claim of pre-emption, is not in a position to contest the right of another pre-emptor to whom a patent has been issued.

ID.—ID.—ID.—ID.—ID.—H. settled on the land in controversy in 1853, as public land, and afterward died, leaving a widow and children; and in 1868, his administrator (the land having been surveyed, and the plat filed in the land office) filed a declaratory statement on behalf of the heirs; and, after a contest with one B., a patent was issued to the heirs. Subsequent to the

inauguration of the contest referred to, the defendant settled upon and improved the land, then unoccupied, and offered to file his declaratory statement; but his offer was refused, because of the rule above referred to. In an action upon the patent by a grantee of the heirs to recover the land, the defendant in his cross-complaint set up the facts above stated; and further alleged, that the land in question was within the claimed limits of a Mexican grant until the final survey thereof some years after the alleged settlement and the death of H., the original pre-emptor; that the land was fraudulently entered in the name of the heirs of H., for the benefit of the plaintiff; and that the testimony upon which the patent was issued was false, and was fraudulently introduced by the plaintiff, in pursuance of his fraudulent design to obtain the land for himself. *Held*, that the facts stated showed no right in the defendant to contest the right of the patentees or their assigns, or to compel a conveyance.

ID.—ID.—ID.—ID.—ID.—THORNTON, J., dissenting, was of the opinion, that the defendant, being a qualified pre-emptor, and having settled upon land open to pre-emption, had a right under the pre-emption law to file his declaratory statement, and that the register and receiver had no right to refuse to receive the same; that the rule under which they justified their action was in derogation to the act, and therefore void; that the offer of defendant to file his declaratory statement placed him in a condition to demand his rights under law; and that therefore the facts stated in his cross-complaint stated a good cause of action.

APPEAL from a judgment in favor of the plaintiff, in the Nineteenth District Court, City and County of San Francisco. WHEELER, J.

The facts are stated in the opinion.

The action is now pending in the Supreme Court of the United States on writ of error.

*James B. Townsend*, for Appellant.

The Court erred in refusing to allow the appellant to prove that the land in controversy was part of an unsurveyed Mexican grant at the time of the alleged settlement of the plaintiff's intestate, or to prove that Hollingsworth never settled on the land now in dispute, and that the entry of the plaintiff for his heirs was fraudulent. (*Garland* v. *Wynn*, 20 How. 6–8; *Cunningham* v. *Ashley*, 14 id. 385, 388; *Lindsey* v. *Hawes*, 2 Black, 554, 556, 557; *Minnesota* v. *Bachelder*, 1 Wall. 109, 111, 115; *Johnson* v. *Towsley*, 13 id. 72, 81, 87; *Warren* v. *Van Brunt*, 19 id. 646; *Moore* v. *Robbins*, 96 U. S. 530.)

Land included within a Mexican claim filed before the United States Board of Land Commissioners was not public land, and

no pre-emption rights whatsoever could be acquired thereto until *after*, by final survey, it had been *excluded from such* claim.

*Prior* to that time, such land being reserved by competent authority, any settlement thereon with a view to pre-emption was expressly *prohibited* by law. (*Cornwall* v. *Culver*, 16 Cal. 429; *Mahoney* v. *Van Winkle*, 21 id. 578; Act of Congress of March 3rd, 1853, "To provide for the survey of the public lands in California," etc., §§ 6 and 7; 10 U. S. Stats. p. 246; *Newhall* v. *Sanger*, 2 Otto, U. S. Rep. 763–765; *Van Reynegan* v. *Bolton*, 5 id. 36; *Rutledge* v. *Murphy*, 51 Cal. 393–395; *Taylor et al.* v. *California*, Copp's Land Laws, p. 330, 333; Opinion of Secretary Thompson, 1 Lester, p. 425, no. 485.)

The lots in controversy were *subject to pre-emption* at the time *defendant* settled upon them, because at *that* time the Mexican claim had been removed from them.

The declaratory statement tendered by the defendant to the register of the United States land office at San Francisco was in time, and ought to have been received and filed. (*Schafer* v. *Scheibel*, Copp's Land Laws, p. 292; *Conroy* v. *Phillips*, id. 297, 298; *Aurrecoechea* v. *State of Cal.* 2 Copp's Land Owner, p. 19; *Taylor* v. *State of Cal.* id. 20.)

Having done everything that he could do in the assertion of his right as a pre-emptor to said land, defendant's right thereto has not been lost nor prejudiced. (*Cunningham* v. *Ashley*, 14 How. 388; *Kile* v. *Tubbs*, 23 Cal. 442, 443; *Robinson* v. *Forrest*, 29 id. 320.)

The case stated by the defendant in his answer and cross-complaint, if proved, will entitle him to the judgment and relief which he asks. (*Hollinshead* v. *Simms*, 51 Cal. 158; *Lynch* v. *Brigham*, id. 491; *Campbell* v. *Buckman*, 49 id. 362; *Lytle* v. *State of Arkansas*, 9 How. 328, 329, 333; *Gaines* v. *Nicholson*, id. 364; *Garland* v. *Wynn*, 20 id. 6–8; *Barnard's Heirs* v. *Ashley's Heirs*, 18 id. 45, 46; *Cunningham* v. *Ashley*, 14 id. 382, 383; *Lindsey* v. *Hawes*, 2 Black, 555, 563; *Minnesota* v. *Bachelder*, 1 Wall. 115; *Johnson* v. *Towsley*, 13 id. 72; *Samson* v. *Smiley*, id. 91, 92; *Warren* v. *Van Brunt*, 19 id. 652; *Morton* v. *Nesheska*, 21 id. 660; *O'Brien* v. *Perry*, 1 Black, 139; *Meador* v. *Parsons*, 19 Cal. 294; *Kile* v. *Tubbs*, 23 id. 442, 443; *Terry* v. *Megerle*, 24 id. 625; *Robinson* v.

*Forrest,* 29 id. 320; *Bird* v. *Wilcox,* 45 id. 686; *Hess* v. *Bolinger,* 48 id. 352; *Frisbie* v. *Whitney,* 9 Wall. 187.)

*Tully R. Wise,* for Respondent.

No case can be found in the United States Supreme Court reports, where any person has ever been permitted to question a patent until he had proved to the satisfaction of the register and receiver that he had complied with the law. In all the cases cited, the party had proved up his claim to the satisfaction of the register and receiver. (*Garland* v. *Wynn,* 20 How. 6; *Lytle* v. *Arkansas,* 9 id. 328; *Cunningham* v. *Ashley,* 14 id. 382; *Barnard* v. *Ashley,* 18 id. 45; *Johnson* v. *Towsley,* 13 Wall. 72.)

*George A. Nourse,* also, for Respondent.

The only ground upon which a trust can be decreed in this, or any like case, is " the well-established doctrine, that where one party has acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title." ˙ (*Stark* v. *Starrs,* 6 Wall. 402; *Johnson* v. *Towsley,* 13 id. 72.)

In the case at bar, the cases just cited show that it is not only necessary to prove that the plaintiff obtained his patent title by fraud, but also that defendant was himself entitled to the patent from the United States for this land. The defendant has never made proof " to the satisfaction of the register and receiver," " of the settlement and improvement required by the pre-emption act under which he claims." (*Hos ter* v. *Wallace,* 47 Cal. 461.)

Ross, J. :

Stripped of the mass of irrelevant and redundant matter found in the record, the case presented is this:

One Hollingsworth, it is claimed, settled on the land in controversy in 1853, as public land. He died intestate the following year, and left, surviving him, a wife and four children. The widow died intestate in 1857. The tract in dispute is

composed of lots 4, 5, and 6 of section 36, in township 2 south, range 6, west of the Mount Diablo base and meridian. This township was surveyed, and a plat of the survey was made and approved by the United States Surveyor-General for the State of California on the 16th of October, 1863. A certified copy of the plat was on the same day filed in the United States land office at San Francisco; but was soon afterwards withdrawn. On the 19th of March, 1868, an amended plat of said township was made, under the authority of said United States Surveyor-General, and approved by him, and a copy thereof was filed in the land office, on both of which plats the land in dispute appeared as surveyed public land of the United States.

November 26th, 1867, the plaintiff Chapman was, by the Probate Court of the city and county of San Francisco, appointed administrator of the estate of the deceased Hollingsworth, and on the 8th of April thereafter letters of administration in the matter of the estate were issued to him. On the day last named, Chapman, as such administrator, filed, on behalf of the heirs of Hollingsworth, in the proper United States land office, a declaratory statement, claiming the said premises under the pre-emption laws of the United States, and alleging that Hollingsworth settled upon the land in 1853, improved it, and continued to reside thereon until his death. A contest for the land thereupon arose in the land office, between the heirs of Hollingsworth, the State of California, and one Bepler, both of the latter being also claimants—Bepler as a pre-emptor. In this contest, testimony was begun to be taken by the register and receiver, in relation to the right of the heirs of Hollingsworth to enter by pre-emption the land in question, on the 18th of August, 1868, and a large amount of testimony was taken therein. The case was finally closed before the register and receiver on the 28th of July, 1869, and resulted in a decision by the register and receiver against the right of the heirs of Hollingsworth to enter the land, and also rejecting the application of Bepler; but awarding the land to the State of California. This decision of the register and receiver was, on appeal to the commissioner of the general land office, reversed by that officer, in so far as it rejected the claim of the heirs of Hollingsworth, and awarded the land to the State of California,

and affirmed, in so far as it rejected the claim of Bepler.  An appeal being taken to the Secretary of the Interior, the decision of the commissioner in the matter was affirmed.  From which it resulted, that the heirs of Hollingsworth were allowed to enter the land, and in due time a patent was issued, conveying to them the legal title.

At one stage in these proceedings, to wit, on the 5th day of February, 1869, the defendant, having theretofore declared his intention to become a citizen of the United States, and possessing at the time the qualifications necessary to enable him to preempt land from the Government, entered upon the lots in question, which were at the time unoccupied, with the intention of pre-empting the same, and erected a dwelling-house and other improvements thereon, and has continued to reside there ever since.  Within three months next after his settlement, the defendant, for the purpose of acquiring the Government title to the property under the pre-emption laws, offered to file with the register and receiver of the land office his declaratory statement in due form, and at the same time tendered to the register and receiver the proper fee.  Those officers refused to accept or file the statement, or to receive the fee, because of a rule then in force in the land department forbidding the filing of a declaratory statement, based upon an alleged right having its origin subsequent to the commencement of a contest between other parties for the same land.  From this ruling of the register and receiver, the defendant appealed to the commissioner of the general land office, where the decision of the register and receiver was affirmed; and from the commissioner's decision, the defendant appealed to the Secretary of the Interior, who affirmed the decision of the commissioner in the matter.

Thus it will be seen, that, after a contest between the State of California, Bepler, and the heirs of Hollingsworth, originating before the register and receiver prior to the defendant's settlement, and carried to the head of the land department of the Government, the land in controversy was finally awarded, and conveyed by patent, to the heirs of Hollingsworth; while, for the reason already mentioned, the application of the defendant to file his declaratory statement was rejected, and he consequently not allowed to become a party to the contest, or to

offer any proof before the register and receiver. After the issuance of the patent to the heirs of Hollingsworth, the plaintiff acquired from them an undivided half of the disputed premises, and subsequently commenced the present action, which is ejectment, to recover the whole of the property from the defendant. The pleadings on the part of the defendant are unnecessarily numerous and long. They occupy sixty-two pages of the printed transcript, and have entailed upon the Court much unnecessary labor in their examination. The substance of them all is, first, an answer denying that the plaintiff has any title to or interest in the lots sued for, but averring that the title thereto is in the defendant; second, a cross-complaint alleging that the land in question was within the claimed limits of the rancho Laguna de la Merced until the final approval of the survey of that grant in 1866, which survey omitted the disputed premises from the boundaries of the grant, and left it public land of the United States; that the plaintiff, fraudulently designing to obtain the land for himself, procured it to be entered under the pre-emption laws of the United States by the heirs of Hollingsworth, based upon an alleged settlement by Hollingsworth in 1853, and his continual residence thereon until his death in the following year; that the land was not subject to pre-emption at the time of Hollingsworth's alleged settlement, but was part of the Mexican grant already mentioned; that, in fact, Hollingsworth never did settle or reside upon the land in question, and never acquired the right to pre-empt the same, and never claimed such right.

The cross-complaint also alleges, at great length, the various proceedings before the officers of the land department, the substance of which has been already stated, culminating in the issuance by the Government of a patent to the land to the heirs of Hollingsworth, and charges that the testimony introduced before the officers, and upon which the patent was finally issued, was false, and was fraudulently introduced by the plaintiff, in pursuance of his alleged fraudulent design to obtain the premises in question for himself. The prayer is that the plaintiff be decreed a trustee for defendant in respect to the property acquired by plaintiff by virtue of his deed from the heirs of Hollingsworth, under the patent from the Government, and

that he be compelled to convey the legal title thereto to the defendant.

Respecting the cross-complaint, the first question that suggests itself is, What right has the defendant shown to the title to the land? Of course, it is incumbent on him to show that he is, in equity, entitled to the legal title before a court of equity can compel the conveyance of such title to him. So far as any supposed right on his part is concerned, it is based upon the facts, that, pending a contest in the land office, between other parties for the land in question, he, the defendant, finding it unoccupied, went upon it on the 5th day of February, 1869, with the intention of acquiring the title to it under the pre-emption laws; that he erected improvements thereon, and has continued to reside there ever since; and within three months after the date of his settlement offered to file his declaratory statement with the register and receiver, at the same time offering them the necessary fee, both of which offers were refused by the officers, because, as already stated, the rules of the land department at the time required that no such statement should be filed or received after the commencement of a contest between other parties for the same land, and there was then pending in the land office such contest, in which the testimony had been partly taken.

It cannot be doubted that the commissioner of the general land office, subject to the supervision of the Secretary of the Interior, may make rules and regulations, not inconsistent with law, for the government of the various officers in the sale and disposal of the public lands, including rules for the making of the required proof, and the trial of pre-emption contests. And conceding, without deciding, that where such rules and regulations are *unreasonable*, the courts may interfere; still it cannot be said that the rule forbidding the filing or receiving by the register and receiver of a declaratory statement for a tract of land, after the inauguration of a contest between other parties for the same land, is so unreasonable as to justify such interference. When such contest arises, testimony is taken on behalf of the respective contestants, and each has the right to cross-examine the witnesses of the other. After this has been done, or partly done, to permit a third party to come in and file a

declaratory statement for the same land, and thus become a party to the contest, would open anew the controversy, and might result in its being kept open to the serious interference with the disposition of the land, and the proper administration of the land department. We know of no law, and have been cited to none, contravened by this rule of the land office, and we cannot say that the officers of that department of the Government had no power to refuse to receive the declaratory statement of the defendant, or to entertain his proofs, upon the facts disclosed by him.

The law under which he claims the right to pre-empt the land in controversy declares, among other things: "That prior to any entries being made under or by virtue of the provisions of this act, proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district in which such lands may lie," etc. (Act Sept. 4th, 1841, § 12, 5 U. S. Stat. at Large, p. 456.) This proof it is essential the defendant should make before *he* could be entitled to enter the land; and of this proof the register and receiver are the exclusive judges, subject to the supervision and control of their superior officers of the land department. The courts have no power to substitute their judgment upon the facts of the defendant's alleged settlement and improvement of the land for that of the officers to whose judgment Congress has confided the determination of those questions. Cases are numerous in which the equitable rights of persons claiming under the pre-emption laws have been protected by the courts against the legal title acquired by other parties by means of the introduction of false testimony, or other imposition upon the officers of the land department, or by the misconstruction by those officers of the law, upon an admitted state of facts. But in all of such cases of which we have any knowledge, the party thus protected had connected himself with the title of the Government, and thereby acquired some right which, in equity, entitled him to protection. We know of no case where the holder of the legal title under a patent from the Government has been compelled by a court of equity to convey that title to one occupying the position of the defendant in the present action. To do so would be to compel the

conveyance of the title from the grantee of the Government to one who had established no right to purchase the land from the Government itself.

Nor do any of the cases cited support the position taken by the defendant.

In *Johnson* v. *Towsley*, 13 Wall. 72, Towsley had made his declaratory statement, and proved his settlement to the satisfaction of the register and receiver, and they gave him a patent certificate. Johnson contested Towsley's right before these officers, and asserted that he was entitled to the pre-emption right for the same land, and when they decided in favor of Towsley he appealed to the commissioner. This officer approved the decision of the register and receiver, and an appeal was taken by Johnson to the Secretary of the Interior. The latter officer rejected Towsley's claim, on the ground that he had previously filed a declaratory statement of his intention to claim a pre-emption for another tract of land, which he had voluntarily abandoned, and consequently awarded the land to Johnson. The Court held that the Secretary's construction of the statute upon the subject of the abandonment was erroneous, and decreed that Towsley was entitled to a conveyance of the title from Johnson.

In *Garland* v. *Wynn*, 20 How. 6, there had been a conflict between two claimants of a right of pre-emption to the same land under different statutes. The register and receiver of the local land office decided in favor of the assignee of Garland, and gave him a patent certificate. The commissioner of the general land office approved of the decision, and issued the patent to Garland. Wynn, the other claimant, whose entry was the oldest, and had been once allowed, thereupon filed his bill in equity, asserting his prior right to the land, and his equitable title to the patent. The Supreme Court of Arkansas sustained the bill, and ordered the patentee to execute a conveyance of the land to the complainant, and on appeal, the Supreme Court of the United States affirmed the decision.

In *Lindsey* v. *Hawes*, 2 Black, 554, the ancestor of the complainant had obtained a pre-emption right to the land in dispute, and received a patent certificate of the same. Some years afterwards, the defendant Hawes claimed a like pre-emption

right to the land, and received a similar certificate, upon which a patent was issued to him. The suit was brought by the heirs of the first pre-emptor, to compel a conveyance of the legal title acquired by the patent from the patentee, and parties claiming under him with notice. The Supreme Court of the United States held, that the first pre-emptor had acquired the better right to the land, and was therefore entitled to a conveyance of the legal title.

The case of *Lytle* v. *The State of Arkansas*, 9 How. 337, is thus stated by the Supreme Court of the United States in *The Yosemite Valley case*, 15 Wall. 90 :

" In that case (*Lytle* v. *State of Arkansas*, 337), a pre-emptioner by the name of Cloyes claimed a right to make an entry of certain lands under the Act of Congress of May 29th, 1830. The act gave to every occupant of the public lands prior to its date, who had cultivated any part thereof in the year 1829, a right to enter at the minimum price, by legal subdivisions, any number of acres not exceeding one hundred and sixty, including his improvements, provided the land was not reserved for the use of the United States, or either of the several States. It required, before any entries could be made, that proof of settlement or improvement by the claimant should be made to the satisfaction of the register and receiver of the land district, pursuant to rules prescribed by the commissioner of the general land office. Under rules thus prescribed, proof was made of the cultivation and improvement of Cloyes, which was satisfactory to the register and receiver, and payment of the price was offered by him. Those officers held, that he was entitled to enter one of the fractional sections claimed, the one upon which his improvement was made, and not the others, and issued a certificate to him to that effect. The plats of the township where the land was situated not having been furnished by the surveyor-general as required, the formal entry with the register could not be made ; but in lieu thereof, under instructions of the commissioner of the general land office, proof identifying the land claimed was allowed to be filed. The Act of 1830 expired in one year, and the public surveys of the land were not completed until December, 1833, and were not returned to the land office until the beginning of 1834. Cloyes had thus

done all that he could do to perfect his right to the title of the
United States, under a law which opened the land for sale in
limited quantities, at specified prices, to its occupants and cul-
tivators.

"Subsequently, in July, 1832, Congress passed an act giving
to parties entitled to pre-emption under the Act of 1830 one
year from the time when the township plats should be returned
to enter the lands. Under this act, the heirs of Cloyes, he hav-
ing died, made payment to the receiver for the fractional section
to which his pre-emption claim was allowed in 1830, as already
stated, and also for the fractional sections to which his claim
was rejected, and applied to the register to enter them, but that
officer refused to allow the entry. The Court held, that, so far
as the fractional quarter-section to which the claim was allowed
by the register and receiver in 1830 was concerned, the refusal
did not affect the right of the claimant. And it is with respect
to the inability of Cloyes to make the entry in 1830 for want of
the township plats which the surveyor-general had failed to re-
turn, and the refusal of the register to allow the entry subse-
quently, under the Act of 1832, that the language cited by
counsel was used by the Court ; namely, that 'It is a well-es-
tablished principle, that when an individual, in the prosecution
of a right, does everything which the law requires him to do,
and he fails to attain his right by the misconduct or neglect of
a public officer, the law will protect him. In this case, the pre-
emption right of Cloyes having been proved, and an offer to pay
the money for the land claimed by him under the Act of 1830,
nothing more could be done by him under that act. And sub-
sequently, when he paid the money to the receiver, under sub-
sequent acts, the surveys being returned, he could do nothing
more than to offer to enter the land, which the register would
not permit him to do. This claim for pre-emption stands before
us in a light not less favorable than it would be if Cloyes or his
representatives had been permitted by the land officers to do
what in this respect was offered to be done,'" and the Court in
the Yosemite case say there is no question about the correctness
of the doctrine there announced.

It is unnecessary to refer in detail to all of the cases which it
is said sustain the position of the defendant. Those already

referred to are the ones to which most weight seems to have been attached, and the wide distinction between them and the case at bar is sufficiently apparent. It is enough to say that in no case to which we have been referred has relief in the nature of that here sought been granted to one who, like defendant, has never filed a declaratory statement, never made proof of settlement, never paid any money, never received any certificate or other recognition from the officers of the land department, but who went upon the premises after the inauguration, of a contest between other claimants to the same land, and at a time when, by the rules and regulations then in force in that department, he had no right to file a declaratory statement, and consequently no right to make proof or payment—in short, no right to pre-empt the land. In our opinion, not only has the defendant failed to show such paramount equities as would justify a decree compelling the conveyance to him of the title conveyed by the patent from the Government, but he does not occupy a position entitling him to be heard to question the proof upon which the officers of the Government acted in awarding the patent to the heirs of Hollingsworth. It is not pretended that the patent is absolutely void. If, as is asserted by the defendant, it was procured to be issued by the introduction of false and fraudulent evidence before the officers of the land department, it is unquestionably voidable at the suit of the Government, or any person in privity with the paramount source of title, but not at the instance of a stranger to that title, as is the defendant. (*Doll* v. *Meador*, 16 Cal. 295; *Burrell* v. *Haw*, 40 id. 377; *Rhodes* v. *Craig*, 21 id. 423; *Stark* v. *Starrs*, 6 Wall. 418.)

Entertaining these views, it is not necessary to inquire whether the action of the Court below can be sustained on other grounds.

For the reasons already stated, we think the judgment and order should be affirmed, and it is so ordered.

MORRISON, C. J., McKINSTRY, J., SHARPSTEIN, J., McKEE, J., and MYRICK, J., concurred.

THORNTON, J., dissenting:

I cannot concur with my associates in their judgment in this case. Since reading the opinion of the Court, I have re-exam-

ined the case fully, and that re-examination satisfies me that the conclusion reached in the former opinion is correct, and that my associates have fallen into errors which will result in great injury to the rights of litigants, and that the conclusions reached by them are contrary to all the decisions of Courts in such cases, so far as any have been cited to us, or that I have been able to find.

The rule upon which one of the points was decided in the former opinion is this: That when the officers of the United States land department decide controverted questions of fact, *in the absence of fraud, or imposition, or mistake,* their decisions on such questions are final, except as they may be reversed on appeal in that department; but that where, on the application of the facts as found by such officers, they, *by misconstruction of the law,* take from a party that to which he has acquired a legal right under the sanction of the law, a court of equity can give relief.

This rule is taken almost *verbatim* from the opinion of the Court by Miller, J., in *Johnson* v. *Towsley,* 13 Wall. 86. This case was a re-examination of the former cases on the subject. It is so stated by the able jurist who drew up the opinion in the case cited.

It is thus stated: "The contest arises out of rival claims to the right of pre-emption of the land in controversy. The register and receiver, after hearing these claims, decided in favor of Towsley, the complainant, and allowed him to enter the land, received his money, and gave him a patent certificate. On appeal to the commissioner of the land office, their action was affirmed, but on a further appeal to the Secretary of the Interior, the action of these officers was reversed, on a construction of an Act of Congress in which the Secretary differed from them, and under that decision the patent was issued to Johnson.

"It will be seen by this short statement of the case, that the rights asserted by complainant, and recognized and established by the Nebraska Courts, were the same which were passed upon by the register and receiver, by the commissioner, and by the Secretary of the Interior; and we are met at the threshold of this investigation with the proposition that the action of the latter officer, terminating in the delivery to the defendant of a

patent for the land, is conclusive of the rights of the parties, not only in the land department, but in the Courts, and everywhere else.

" This proposition is not a new one in this Court in this class of cases, but it is maintained, that none of the cases heretofore decided extend, in principle, to the one before us; and the question being pressed upon our attention with an earnestness and fullness of argument which it has not perhaps before received, and with reference to statutes not heretofore considered by the Court, we deem the occasion an appropriate one to re-examine the whole subject." (13 Wall. 81.)

Two points were then discussed. The first is based on the Acts of Congress in relation to proceedings in the land department; the second, on the general doctrine, " that when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others."

The point first mentioned above was, that, by virtue of the provisions of the 10th section of the Act of June 12th, 1858 (11 Stats. at Large, 326), amending the 11th section of the general pre-emption law of 1841, the decision of the commissioner of the general land office, on appeals in cases of contest between different settlers for the right of pre-emption, shall *be final*, unless an appeal be taken therefrom to the Secretary of the Interior. After examining the various Acts of Congress bearing thereon, the conclusion reached is thus stated: " In the use of the word "final," we think nothing more was intended than to say that, with the single exception of an appeal to his superior, the Secretary of the Interior, his decision should exclude further inquiry in that department. But we do not see, in the language used in this connection, any intention to give to the final decision of the Department of the Interior, to which the control of the land system of the Government had been transferred, any more conclusive effect than what belonged to it without its aid." (13 Wall. 83.)

After stating that the Court finds no support to the proposition of the counsel for the plaintiff in error in the special provisions of the statute relied on (which has been just above

stated), the Court proceeds to discuss the second proposition, and concludes that the argument is much stronger when based on the general doctrine expressed in it. Admitting, under the principle above set forth, that the action of the land office in issuing a patent for any of the public land, subject to sale by pre-emption or otherwise, is conclusive of the *legal title*, and in all Courts and in all forms of judicial proceedings, where the legal title must control, either by reason of the limited powers of the Court, or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained, the learned jurist proceeds thus :

" On the other hand, there has always existed in the courts of equity the power in certain classes of cases to inquire into and correct mistakes, injustice, and wrong in both judicial and executive action, however solemn the form which the result of that action may assume, when it invades private rights ; and by virtue of this power the final judgments of courts of law have been annulled or modified, and patents and other important instruments issuing from the crown, or other executive branch of the Government, have been corrected or declared void, or other relief granted. No reason is perceived why the action of the land office should constitute an exception to this principle." (13 Wall. 84.)

The opinion then proceeds to show particularly why such rules should apply to the United States land department, in these words :

" In dealing with the public domain under the system of laws enacted by Congress for their management and sale, that tribunal decides upon private rights of great value, and very often, from the nature of its functions, this is by a proceeding essentially *ex parte*, and peculiarly liable to the influence of frauds, false swearing, and mistakes. These are among the most ancient and well-established grounds of the special jurisdiction of courts of equity just referred to, and the necessity and value of that jurisdiction are nowhere better exemplified than in its application to cases arising in the land office. It is very well known that these officers do not confine themselves to determining, before a patent issues, who is entitled to receive it; but they frequently assume the right, long after a patent has issued and the legal

title passed out of the United States, to recall or set aside the patent, and issue one to some other party, and if the holder of the first patent refuses to surrender it, they issue a second.   In such a case as this, have the Courts no jurisdiction?   If they have not, who shall decide the conflicting claims to the land? If the land officers can do this a few weeks or a few months after the first patent has issued, what limit is there to their power over private rights?   Such is the case of *Stark* v. *Starrs*, 6 Wall, 402, in which the patent was issued to one party one day, and to the other the day after, for the same land.   They are also in the habit of issuing patents to different parties for the same land, containing in each instrument thus issued a reservation of the rights of the other party.   How are those rights to be determined, except by a court of equity?   Which patent shall prevail, and what conclusiveness, or inflexible finality, can be attached to a tribunal whose acts are in their nature so inconclusive?   So, also, the register and receiver, to whom the law primarily confides these duties, often hears the application of a party to enter land as a pre-emptor or otherwise, decides in favor of his right, receives his money, and gives him a certificate that he is entitled to a patent.   Undoubtedly this constitutes a vested right, and it can only be divested according to law.   In every such case, where the land office afterwards sets aside this certificate, and grants the land just sold to another person, it is of the very essence of judicial authority to inquire whether this has been done in violation of law, and if it has, to give appropriate remedy." (13 Wall, 85.)   And then proceeds to state the general rule as follows: " And so, if for any other reason recognized by courts of equity, as a ground of interference in such cases, the legal title has passed from the United States to one party, when, in equity and good conscience, and by the laws which Congress has made on the subject, it ought to go to another, ' a court of equity will,' in the language of this Court in the case of *Stark* v. *Starrs*, just cited, ' convert him into a trustee of the true owner, and compel him to convey the legal title.'   In numerous cases, this has been announced to be the settled doctrine of this Court in reference to the action of the land office. (*Lytle* v. *Arkansas*, 22 How. 192; *Garland* v. *Wynn*, 20 id. 8; *Lindsey* v. *Hawes*, 2 Black, 559.)" (13 Wall, 85.)

After stating with a reference to cases that the same doctrine had been applied in Kentucky, Virginia, and Pennsylvania, which States had a system of land sales, and that several of the Kentucky cases cited had come to the United States Supreme Court, where the principle had been uniformly upheld, the learned Judge remarks, that "it is said that the present case does not come within any of the adjudicated cases on the subject; that in all of them there has been some element of fraud or mistake, on which the cases rested." (13 Wall. 86.)

We think it proper to say here, that this point was urged and this concession made by a learned lawyer and jurist, Judge Lyman Trumbull of Illinois. It is hardly to be supposed that so eminent a lawyer as Judge Trumbull would have made such concession unless it was in conformity with the acknowledged adjudications of the Courts, or it was manifest on principle.

The opinion then proceeds in relation to the point thus stated, and the concession of the advocate, and states the rule we have referred to:

"Undoubtedly there has been in all of them some special ground for the exercise of the equitable jurisdiction; for this Court does not, and never has, asserted that all the matters passed upon by the land office are open to review in the Courts. On the contrary, it is fully conceded, that, when those officers decide controverted questions of fact, in the absence of fraud or impositions or mistake, their decision on those questions is final, except as they may be reversed on appeal in that department. But we are not prepared to concede, that when, in the application of the facts as found by them, they, by misconstruction of the law, take from a party that to which he has acquired a legal right under the sanction of those laws, the Courts are without power to give any relief. (13 Wall. 86.)

It will thus be seen that the learned counsel for the plaintiff in error, and the able and distinguished Court, speaking through Mr. Justice Miller, concede the point as correct, laid down in the opinion of Department Two, in regard to fraud or imposition or mistake in relation to controverted questions of fact, and cites two of the cases referred to in that opinion, and adds another, from 2nd Black. The case of *Johnson* v. *Towsley* turned upon a question of law held to be improperly decided by the Secretary of the

Interior in awarding the land to Johnson, reversing the decisions of the register and receiver and the commissioner of the general land office. It is stated in the opinion, that this very point had been decided (that the Courts would correct mistakes of law by the officers of the land department) in *Minnesota* v. *Bachelder*, 1 Wall. 109, and *Silver* v. *Ladd*, 7 id. 219; and states the facts in *Silver* v. *Ladd*, and the decision of the Court, and then proceeds, as to the respective functions of the officers of the land department and the Courts, as follows:

"This Court has at all times been careful to guard itself against an invasion of the functions confided by law to other departments of the Government; and in reference to the proceedings before the officers intrusted with the charge of selling the public land, it has frequently and firmly refused to interfere with them in the discharge of their duties, either by mandamus or injunction, so long as the title remained in the United States, and the matter was rightfully before those officers for decision. On the other hand, it has constantly asserted the right of the proper Courts to inquire, after the title has passed from the Government, and the question became one of private right, whether, according to the established rules of equity and the Acts of Congress concerning the public lands, the party holding that title should hold absolutely as his own, or as trustee for another. And we are satisfied that the relations thus established between the Courts and the land department are not only founded on a just view of the duties and powers of each, but are essential to the ends of justice, and to a sound administration of the law." (13 Wall. 87.)

The opinion then continues in a discussion of the particular facts of the case before the Court, and affirms the judgment of the Court below in favor of Towsley, the complainant, on the ground that an error or mistake in law had been committed by the Secretary of the Interior in deciding in favor of Johnson. Johnson was thus held a trustee for Towsley, and ordered to convey to him. Clifford, J., dissented, and put his dissent on the distinct ground that the decision of the land officers was final, "except in cases of *fraud or mistake* not known at the time of the investigation by the land department." (13 Wall. 91.) Davis, J., took no part in the decision.

It will thus be seen, that all the judges but one participated in the decision, and all agreed that, in cases of *fraud*, the ordinary courts of justice competent to try such questions of fraud had jurisdiction. The only difference of opinion was as to decisions on questions of law.

I cannot see how it can be controverted that such fraud or imposition or mistake relates to matters of fact. If that is not the *meaning* of the opinion in *Johnson* v. *Towsley*, then a greater part of the opinion is *meaningless*.

This rule was held to be in accord with the judgments of the Court in cases formerly decided. (13 Wall. 81, 85—on latter page citing three cases.) It has been since repeatedly adhered to by the same Court in the cases following : *Samson* v. *Smiley*, 13 Wall. 91; *Warren* v. *Van Brunt*, 19 id. 653 ; *Shepley* v. *Cowan*, 91 U. S. R. 330 ; *Moore* v. *Robbins*, 96 id. 530 ; *Marquez* v. *Frisbie*, 101 id. 473. In relation to this rule, Field, J., delivering opinion of the Court in one of the above-cited cases, says : " If the matter were open for our consideration, we might perhaps doubt as to the sufficiency of the proofs presented by the heirs of Chartrand to the officers of the land department to establish a right of pre-emption by virtue of the settlement and proceedings of their ancestor. Those proofs were, however, considered sufficient by the register of the local land office, by the commissioner of the general land office on appeal from the register, and by the Secretary of the Interior on appeal from the commissioner. There is no evidence of any fraud or imposition practiced upon them, or that they erred in the construction of any law applicable to the case. It is only contended that they erred in their deductions from the proofs presented ; and for errors of that kind, where the parties interested *had notice of the proceedings before the land departmemt, and were permitted to contest the same*, as in the present case, the Courts can furnish no remedy. The officers of the land department are specially designated by law to receive, consider, and pass upon proofs presented with respect to settlements upon the public lands with a view to secure rights of pre-emption. If they err in the construction of the law applicable to any case, or if fraud is practiced upon them, *or if they themselves are chargeable with fraudulent practices*, their rulings may be reviewed and annulled by the

Courts when a controversy arises between private parties, founded upon their decisions; but, for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from one officer to another of the department, and perhaps, under special circumstances, to the President. It may also be, and probably is, true that the courts may furnish, in proper cases, relief to a party where new evidence is discovered, which, if possessed and presented at the time, would have changed the action of the land officers; but, except in such cases, the ruling of the department on disputed questions of fact made in a contested case must be taken, when that ruling is collaterally assailed, as conclusive." (91 U. S. R. 339–340.)

This was said in regard to the *facts*—" the sufficiency of the proofs." In *Warren* v. *Van Brunt* (opinion by Waite, C. J., whole court concurring), the rule is stated with regard to the facts: The *record* did not disclose the facts found by the officers. The Court, however, considered the facts as found by the Court. This was done, no doubt, to see whether there was any error of law by the Court, as the Court found there was no fraud or unfairness or misconduct. (19 Wall. 652, 653.) *Moore* v. *Robbins* came before the Court on a writ of error to the Supreme Court of Illinois. That Court held the decision of the land department conclusive on the Courts. Their judgment was reversed, and the rule is stated as appears above. It is expressly stated in laying down the rule, that, " as to the facts on which their decision is based (referring to the decision of the land department) in the absence of *fraud* or *mistake*, that decision is conclusive," etc.—which is no doubt the same as saying that where there is *fraud* or *mistake* as to the facts, their decision is not conclusive. It is further stated, that in such cases courts of equity have " jurisdiction *to correct mistakes, to relieve against frauds and impositions,*" etc. (96 U. S. Rep. 535.) In *Marquez* v. *Frisbie*, the jurisdiction of the Court was admitted, but it was decided on the grounds that there was no sufficient allegation of mistake in law, or of fraud and imposition. The cause was tried in the Court below on a demurrer to the complaint, which was sustained, and the plaintiff declining to amend, judgment was rendered for defendant.

The cause came before the United States Supreme Court on a writ of error to the Supreme Court of this State, which Court had affirmed the judgment thus rendered on demurrer. The jurisdiction was invoked, both on the ground of mistake in law and fraud and imposition as to the facts, and the jurisdiction of the Court was admitted, but held not to have erred in refusing to exercise it, on account of the defects in the averments in the complaint.

The cases before *Johnson* v. *Towsley* are numerous: *Comegys* v. *Vasse*, 1 Peters, 212; *Lytle* v. *State of Arkansas*, 9 How. 328; *Cunningham* v. *Ashley*, 14 id. 377; *Barnard* v. *Ashley*, 18 id. 44; *Garland* v. *Wynn*, 20 id. 6; *Lytle* v. *Arkansas*, 22 id. 192; *Lindsey* v. *Hawes*, 2 Black, 554; *O'Brien* v. *Perry*, 1 id. 139; *Minnesota* v. *Bachelder*, 1 Wall. 109; *Stark* v *Starrs*, 6 id. 402; *Silver* v. *Ladd*, 7 id. 219. In the opinion of Miller, J., in *Johnson* v. *Towsley*, it is twice expressly or by implication stated, that the judgments in these cases are not departed from in the ruling in that. (13 Wall. 81–85.)

We have cited above *seventeen cases* in all from the United States Supreme Court, with the rulings in which the opinion of the department in this case accords. It is unnecessary to refer to the opinions in the Circuit Courts which are in like accord.

*Hosmer* v. *Wallace*, 47 Cal. 461, states the rule as above, and cites *Johnson* v. *Towsley*. The rule is twice stated approvingly, in the opinion of the Court, on page 471, and again on page 473. The same rule was stated as law in *Hess* v. *Bolinger*, 48 Cal. 353, and in *Burrell* v. *Haw*, id. 225. In *Rutledge* v. *Murphy*, 51 Cal. 391, the Court was asked to review *Hosmer* v. *Wallace*, as unsupported by reason or authority, and in conflict with *Warren* v. *Van Brunt*, 19 Wall. 646. The Court did not do so, stating that the judgment must be affirmed on other grounds, saying: "But we are not to be understood as admitting by implication the incorrectness of that decision, which was founded on the authority of *Johnson* v. *Towsley*." (*Rutledge* v. *Murphy*, 51 Cal. 391.)

In *Dilla* v. *Bohall*, 53 Cal. 710, no question of fraud or imposition was involved, but a mere question of law. The same may be said of *Powers* v. *Leith*, 53 Cal. 712. The defendant's

entry (No. 304) on which he succeeded, was not attacked for fraud. If the Court intend to hold in the two cases last cited, that the decisions of the land department on questions of fact, where they are properly alleged to be false and fraudulent and to have imposed on the officers of that department in making their decisions, are not subject to review by the courts, they are opposed to the rulings in *Hosmer* v. *Wallace*, and *Hesse* v. *Bolinger*, and the numerous decisions of the United States Supreme Court above cited. This I do not think they intended to do.

In the complaint in this case the defendant alleges fraud and imposition upon the officers of the land department by the parties under whom the plaintiff claims, and makes all other necessary averments to make out his case. They are fully stated in the opinion of the department, and it is unnecessary to repeat them here. Does he not also allege an error in law by the same officers, in setting out that the land was within the limits of the Mexican grant when Hollingsworth's settlement was made, and that the land was *not* then subject to pre-emption, and was not so subject until the final survey of the grant was approved in 1866? It may be added here, that the demurrer to the amended answer and cross-complaint was overruled.

The cross-complaint shows clearly that the defendant is in equity entitled to a conveyance from the plaintiff. The error of the Court below was in not allowing him to establish the averments of the cross-complaint. The offers to prove the allegations were competent under the pleadings. They were excluded, and those rulings are the errors assigned. To hold that because a contest was pending between other parties for the land, and therefore the defendant should not be allowed to bring his case before the proper officers, would be as reasonable as to sustain the action of a court who had held that a party could not sue to recover a tract of land on the ground that an action was then pending in the court between other parties for the same land.

The register and receiver refused to allow the defendant to file his declaratory statement and make proof and payment (all of which he offered to do), on the ground "that the rules of the

land department at that time required that no such statement should be filed or received after the commencement of a contest between other parties for the same land"; and there was then pending in the land office such a contest in which the testimony had been partly taken.

It is not contended that the defendant did not have a right to file his statement, except for the reason just above stated. He did, in fact, bring himself within the law. (See Act of Congress of 1841, in relation to pre-emptions, 5 U. S. Stats. §§ 10 –15, and Act of 1853, extending the provisions of this act in relation to pre-emptions to State of California.)

The 10th section of the Act of September 4th, 1841, provides, that from and after the passage of that act, that such a person as the plaintiff is admitted to be, who has made a settlement on the public lands which have been surveyed, and who shall inhabit and improve the same and erect a dwelling-house thereon, is authorized to enter with the register of the proper land office, by legal subdivisions, any number of acres not exceeding one hundred and sixty. The provisions of the 12th section will be found below in this opinion, and need not be inserted here. The 13th section prescribes an oath to be taken by a person claiming the benefit of the act, to the effect that he has never had the benefit of any right of pre-emption under the act, that he is not the owner of three hundred and twenty acres of land in any State or Territory, etc. This oath is admitted to have been taken. No question is made concerning it, and therefore no further reference need be made to it. By the 15th section of the same act, it is provided, that, whenever any person shall settle and improve a tract of land, *subject at the time of settlement to private entry*, and shall intend to purchase the same under the provisions of this act, such person shall, within thirty days next after the date of such settlement, file with the register of the proper land district a written statement describing the land settled on, and declaring his intention to claim the same under the provisions of this act; and shall, where such settlement is made after the passage of the act, within twelve months after the date of such settlement, make the proof, affidavit, and payment required by the act, and if he fails to file the statement referred to, or make proof and payment within the time pre-

scribed as to each, the tract of land so settled on and improved shall be subject to the entry of any other purchaser.

Where the settlement is on land not subject to private entry, the declaratory statement is required by the fifth section of the Act of March 3rd, 1843 (see 5 U. S. Stats. at Large), within three months from the time of settlement, where such settlement is made after the passage of the act. (See on construction of the Acts of Congress on this point, *Johnson* v. *Towsley*, 13 Wall. 88, 89.)

These sections are referred to to show that the right to enter is personal to the settler (10th section), as is the right to make proof (12th section), and the right to file the declaratory statement (§ 15). The 12th section requires expressly, that, prior to any entries being made under and by virtue of the provisions of this act, proof of the settlement and improvement thereby required shall be made, etc. Here the settler is required to make proof, and by the 15th section to make it within twelve months after settlement. Can any officer, whether register and receiver, or commissioner, or Secretary of the Interior, make any rule or regulation which would debar a settler of a right thus vested in him by Act of Congress? Would not such a rule or regulation be repugnant to the Acts of Congress above mentioned? The mere statement of the question furnishes the answer, and demonstrates that such rule or regulation would be of no force.

It would be surprising to find *in the state of the law as above set forth,* that any officer of the United States was invested with a power to deny a party a hearing upon a claim presented by him, as prescribed by Congressional enactment. After a hearing, such officer might decide adversely to the claim set up, but certainly he could not deny a hearing. This has been done here, and it is sanctioned by the judgment of this Court. There is a limitation of the power to make rules and regulations, defined in the *Acts of Congress.* The power comes primarily from the twelfth section of the statute of 1841, in relation to preemption rights (see 5 U. S. Stats. at Large, 456 ; Lester's Land Laws, 62), which is in these words : " That prior to any entries being made under and by virtue of the provisions of this act, proof of the settlement and improvement thereby required

shall be made to the satisfaction of the register and receiver of the land district in which such lands may lie, agreeably to such rules as may be prescribed by the Secretary of the Treasury, who shall each be entitled to receive fifty cents from each applicant for his services, to be rendered as aforesaid, and all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void."

By the Act of Congress of 3rd of March, 1849, establishing the Home Department (Interior), the duties then discharged by the Secretary of the Treasury in relation to the general land office were assigned to the Secretary of the Interior. (See 3rd section of this act, Lester's Land Laws, 151.)

The rules and regulations referred to in the Act of 1841 (12th section) were, after the passage of the act of 1849, framed by the Secretary of the Interior, instead of the Secretary of the Treasury. Though in fact framed by the commissioner of the general land office, they are in law framed by the Secretary of the Interior, as they are made in his department and under his supervision.

By the Act of July 4th, 1836, it was provided (see 1st section of act, 5 U. S. Stats. at Large, 107), that from and after the passage of that act, the executive duties now prescribed or which hereafter may be prescribed by law, appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such lands, and also such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the United States, shall be subject to the supervision and control of the commissioner of the general land office, under the direction of the President of the United States. The Act of 1849, above referred to, substituting the Secretary of the Interior in place of the Secretary of the Treasury, in all matters connected with the Federal Land Department, gave the former officer a supervision and control over the commissioner above mentioned—the Secretary being under the supervision and control of the President.

But the limitation in the 12th section of the Act of 1841, as to the rules applied to all of the officers above named, whether commissioner or secretary or president, and this must be so, since the whole power as to the public lands is in Congress, and it

alone is vested with authority to make all needful rules and regulations concerning them. (Const. U. S. art. iv, § 3; *Parker* v. *Duff*, 47 Cal. 561, 562, et seq., and cases cited. *Wilcox* v. *Jackson*, 13 Peters, 516; *U. S.* v. *Fitzgerald*, 15 id. 421; *Frisbie* v. *Whitney*, 9 Wall. 192.)

The language of the provision of the Constitution of the United States referred to is this: "The Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States."

Now what is the authority given by Congress? It is comprised in the words used in the 12th section of the Act of 1841, above cited, "that prior to any entries being made under and by virtue of the provisions of this act, proof of the settlement and improvement," etc., "shall be made to the satisfaction of the register and receiver," * * * "agreeably to such rules as shall be prescribed" by the Secretary of the Interior. The section then proceeds to fix the compensation to the register and receiver for the services rendered in regard to such proof.

The limitation referred to in regard to such rules and regulations to be prescribed, is as to the proof, not to the refusal to allow such proof. The proof is to be made under *such rules and regulations*, and nowhere is any officer of the United States authorized to make rules denying a party the right to make such proof prior to the entry of the land. As was said by Attorney-General Butler on this subject, "The commissioner is merely to prescribe rules conformably to which the proof is to be made; *the proof itself is indispensable.*" (3rd Opinions of Attorneys-General, p. 127.) It may be that such rules and regulations may be made disallowing such proof after an entry has been regularly made. But this question is not before us, as the application here was made before any entry was made or could be made.

The rules and regulations having to be made as to the proof, it does not apply to filing the declaratory statement. This statement is filed under a right allowed by the *Acts of Congress*, and no officer is authorized to decline to receive it, at any rate, before entry. The right to file such statement is given by the acts referred to, and the officers of the land department could no more

refuse to receive it than the board of commissioners could refuse to receive a claim for a grant from the Mexican authorities under the Act of 1851, when presented within the period fixed by law. In fact, the declaratory statement is but the filing of a claim. It determines nothing, and is of no avail until established by the proof required by law.

If, then, a party has a right to file his claim, he has a right to make proof. The one is a consequence of the other. It is a matter of no consequence that other parties have commenced to make proof. The authority given by the 12th section of the Act of 1841 applies to each person who presents his claim. That person has such right. It is given to him by law. To hold that this right is cut off or can be cut off by a rule that the claim cannot be presented, or proof made after some evidence has been taken in a contest between other parties, is in derogation of the Acts of Congress, and is a denial of a right given by such acts. Such ruling concedes to the officers the right to dispense with the law; in other words, to legislate. This power cannot be exercised by officers of the executive department.

The officers of the land department are nowhere allowed to deny a party the right to present his claim. These rules only refer to the proof, and not to the presentation of the claim. Nor can they refuse to receive the proof. They can make rules, etc., as to the proof offered, but this power does not include the right to deny to a claimant the opportunity of offering it.

The settler upon public land, complying with the conditions of the law, has a right to file his declaratory statement until an entry has been made. (See opinion of Attorney-General Mason, 1 Lester's Land Laws, etc., 380, of Secretary of the Interior, id. 395, 407, 415, 417.) In *Daniels* v. *Diggs*, the acting secretary held that the law allowed a pre-emption claimant, thirty days from the date of his settlement, to file for offered land, and three months for unoffered land, and an entry thereof, before his application to file, if within the legal time, will not debar him of his right. (1 Lester's Land Laws, 418, 419.)

The offer to file the declaratory statement, pay all fees and make proffer of payment, as was done by defendant, placed him in a condition to demand his rights here under the law. This is sustained by the decision of the Supreme Court of the United

States in *Lytle* v. *State of Arkansas*, 9 How. 333, and the Yo-semite Valley case, 15 Wall. 91.   The rule is thus stated: "It is a well-established principle, that where an individual in the prosecution of a right does everything which the law requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him." In this case, the pre-emption right of Cloyes having been proved, and an offer to pay the money for the land claimed by him under the act of 1830, nothing more could be done by him, and noth-ing more could be required of him under that act.   And subse-quently, when he paid the money to the receiver, under subse-quent acts, the surveys being returned, he could do nothing more than to offer to enter the land, which the register would not permit him to do.   This claim for pre-emption stands before us in a light not less favorable than it would if Cloyes or his representatives had been permitted by the land officers to do what in this respect was offered to be done." (9 How. U. S. 333.)

Field, J., in the Yosemite case, commenting on what is above cited, said: "There is no question about the correctness of the doctrine here announced; it is only a familiar principle which is stated, that where one offers to do everything upon which the acquisition of a right depends, and is prevented by fault of the other side, his right shall not be lost by his failure." (15 Wall. 91.)

It is but an application of the principle embodied in the maxim, that equity considers that as done which ought to have been done.

The just interpretation of this rule is, that when a person has done all in his power to obtain what he is entitled to, and he is defeated by the wrong or neglect of a public officer, he is con-sidered as holding the same position to have his rights deter-mined as if all had been done.   (Story's Eq. Jur. § 64 g.)

The defendant does not seek here to enter the land, but asks to be permitted to show that another person has, by fraud and imposition, been allowed to enter it, and has procured that which he ought to have.   He therefore asks the plaintiff be held a trustee for him, and be compelled to convey to him the title which he has thus unjustly acquired.   It is no answer to the

application of the defendant to the Courts, that he has never made any proof in the land office of his right to enter the land. He could not make any : he was illegally deprived of his right to make proof. For that reason, he applies to a court of equity. This very circumstance gives him standing in Court. On this very point, in *Johnson* v. *Towsley*, this language is used as to the rulings of the Supreme Court of the United States : " It has constantly asserted the right of the proper Courts to inquire, after the title has passed from the Government, and the question become one of private right, whether, according to the established rules of equity and the Acts of Congress concerning the public lands, the party holding that title should hold absolutely as his own, or as trustee for another." (13 Wall. 87.) The same doctrine is clearly laid down in *Shepley* v. *Cowan*, and *Moore* v. *Robbins*, above referred to. If the Courts have no jurisdiction in such a case as this, where the defendant has had no hearing at all, where is his remedy ? If the allegations of his complaint are true, he is entitled to the land. He has had no hearing in the land office. If it is held that he has none in the Courts, what remedy has he? The Courts have no right to interfere while the matter is before the officers of the land department, and those officers are discharging their duties, in any way whatever, so long as the title remains in the United States. But when the title has passed from the Government, the aid of Courts can be invoked, as we have above pointed out. (13 Wall. 87.) The defendant has sought his remedy in the proper quarter, by seeking redress from the Courts. If he is denied a hearing in the Courts, his cause is decided against him without any hearing at all.

The case under consideration is the same as that presented in *Hollingshead* v. *Simms*, 51 Cal. 159. In that case, the register and receiver refused to allow Simms to file his declaratory statement because the land had been certified over to the State. Simms made no proof in the land office. The grantor of Hollingshead had procured a patent from the State, to which the land has been listed as University land. This Court reversed the judgment of the Court below, and ordered a conveyance to be made by Hollingshead to Simms, on the ground, that by fraud and perjury Simms had been deprived of that to which

he was in equity entitled. It does not appear that it ever occurred to counsel or Court that Simms must adduce proof of some kind before the land officers, and that in case he did not, the Courts could afford him no relief.

In this case, where the defendant has done all that it was in his power to do, this Court holds that he is bound by a determination, where he was not a party and not allowed to be a party, nor in privity with either party. His claim is not investigated; and though he may have the title, his rights are determined adversely to him, without a hearing. In reality, it is held, that, though he may have the better right to the land in question, and has done all he could to assert it, he is concluded without any hearing whatever by any tribunal.

The proceedings before the land department were entirely *ex parte*, and therefore the authorities above cited apply with the greater force. The defendant was not heard at all. The determination of the land officers cannot, therefore, be held in any way conclusive as to the rights of the defendant. There is no determination binding on defendant on any question of fact or law. Though the officers referred to did hold in the case before them that the land in controversy was, at the time (1853) of the alleged settlement of Hollingsworth, public land, and not a part of the rancho Laguna de Merced, this determination was had in the absence of the defendant, and should not be regarded as in the least affecting him. If the land sued for was, in 1853, a part of the rancho Laguna de Merced, when the settlement of Hollingsworth was alleged and is found to have been made, as the claim for it was then pending before the tribunals of the United States for adjudication, it was not subject to pre-emption, and the heirs of Hollingsworth could derive no benefit from such settlement. (*Trenouth* v. *San Francisco*, 100 U. S. Rep. 251; *Page* v. *Fowler*, 37 Cal. 105.)

For the foregoing reasons, I am of opinion that the Court below erred in excluding the testimony offered as to the rancho Laguna de Merced, and the offer to make proof by Knowles that Hollingsworth never made any settlement on the land in question; that the conclusions reached by Department Two are correct, and that the judgment should be reversed, and the cause remanded for a new trial.