[In Bank. — February 27, 1883.]

## CHARLES McLAUGHLIN, RESPONDENT, *v.* CHRISTO-PHER HEID, APPELLANT.

EJECTMENT — CONGRESSIONAL GRANT — PATENT. — In an action of ejectment based on a patent purporting to have been issued in pursuance of a grant by Congress, it is competent for the defendant to attack the validity of the patent on the ground that the land was excepted from the grant.

APPEAL from a judgment of the late District Court of the Fifth Judicial District, county of San Joaquin, and from an order refusing a new trial.

*J. H. Budd,* for Appellant.

Lands within the limits of the tract of land called "Moquelemos" were not sold or granted under the authority of the United States to the Western Pacific Railroad Company. (*McLaughlin* v. *Fowler,* 52 Cal. 203; *Newhall* v. *Sanger,* 92 U. S. 761.)

The patent for the defendant having been for land reserved from such appropriation is void.

To the same effect are the cases of *Patterson* v. *Winn,* 11 Wheat. 380; *Easton* v. *Salisbury,* 21 How. 432; *Kissell* v. *St. Louis Schools,* 18 How. 27; *Summers* v. *Dickenson,* 9 Cal. 554;

*Carr* v. *Quigley*, 57 Cal. 394; *Doll* v. *Meador*, 16 Cal. 325; *Terry* v. *Megerle*, 24 Cal. 609.

Patents issued without authority of law, for land, are absolutely void. (*Summers* v. *Dickenson*, 9 Cal. 554; *Parker* v. *Duff*, 47 Cal. 554; *People* v. *Carrick*, 51 Cal. 325; *Easton* v. *Salisbury*, 21 How. 432; *Stoddard* v. *Chambers*, 2 How. 318; *Polk's Lessee* v. *Wendal*, 9 Cranch, 87; *Patterson* v. *Winn*, 11 Wheat. 380; *Wilcox* v. *Jackson*, 13 Peters, 511; *Kissell* v. *St. Louis Schools*, 18 How. 27; *Reichart* v. *Felps*, 6 Wall. 160; *Wright* v. *Rutgers*, 14 Mo. 585.

*Mich. Mullany*, of counsel for Appellant.

*Tully R. Wise*, for Respondent.

The question is whether in an action of ejectment a person having no title can give in evidence facts that would render a patent perfect on its face null and void. We maintain that such evidence is inadmissible. (*Bledsoe's Devisees* v. *Well*, 4 Bibb. 329; *Doll* v. *Meador*, 16 Cal. 327; *Jackson* v. *Lawton*, 10 Johns. 24; *Patterson* v. *Tatum*, 3 Sawy. 172; *Dodge* v. *Perez*, 2 Sawy. 654; *Jackson* v. *May*, 16 Johns. 184; *Jackson* v. *Hudson*, 3 Johns. 374; *Mowry* v. *Whitney*, 14 Wall. 434; *U. S.* v. *Atherton*, 102 U. S. 372; *U. S.* v. *Schurz*, 102 U. S. 404; *Marquez* v. *Frisbie*, 101 U. S. 475; *Chapman* v. *Quinn*, 56 Cal. 256; *French* v. *Fyan*, 93 U. S. 169; *Shepley* v. *Cowan*, 91 U. S. 339; 93 U. S. 169.)

Upon questions of fact the decision of the land office is conclusive. (*Dilla* v. *Bohall*, 53 Cal. 710; *Powers* v. *Leith*, 53 Cal. 711.)

Whenever authority is given to issue a patent upon a prior state of facts, the authority to ascertain the facts is implied.

The judicial department has no authority to decide questions except when the law gives it. (*Berry* v. *Cammet*, 44 Cal. 347; *Hosmer* v. *Wallace*, 47 Cal. 461; *Hestres* v. *Brennan*, 50 Cal. 211; *Weaver* v. *Fairchild*, 50 Cal. 360.)

There is nothing in the world that is more a question of fact than the location of a Mexican grant. (*Hildebrand* v. *Stewart*, 41 Cal. 387; *Burrell* v. *Haw*, 40 Cal. 373; *Hess* v. *Bolinger*, 48 Cal. 349; *Rutledge* v. *Murphy*, 51 Cal. 388.)

In this case the appellant did not appeal to the commissioner and he could not defeat us in equity. (See *Sac. Savings Bank* v. *Hynes,* 50 Cal. 196.) *Shipley* v. *Cowan,* 91 U. S. 340, also holds that the rulings of the land officers are conclusive.

The Statute of Limitations has run in our favor against all the world but the government. (See *Lord* v. *Sawyer,* 57 Cal. 65.)

*F. T. Baldwin,* and *J. C. Campbell,* also for Respondent.

The facts sufficiently appear in the opinion of the court.

Per Curiam. — This was an action of ejectment in which judgment was rendered for plaintiff. This appeal is prosecuted by defendant.

The plaintiff claimed under a patent of the United States purporting on its face to have been issued under a grant of land made to the Central Pacific Railroad Company, and the Western Pacific Railroad Company, by acts of Congress passed in the years 1862 and 1864. This patent was offered in evidence, together with other evidence, and to both patent and the evidence referred to, various objections were made by defendant. These objections were overruled by the court, and exceptions were reserved by defendant to its rulings, as to which we consider it only necessary to say that we find no error in the rulings excepted to.

To defeat the recovery by plaintiff defendant offered to show that at the time of the grant by Congress under which the patent to plaintiff's grantor purports to have been issued, the land in controversy was included within the exterior limits of a tract of land claimed as a Mexican grant, and known as "Moquelamos," which was reserved from the grant to the railroads mentioned; that afterwards, on the 5th of December, 1876, he (defendant) was a qualified pre-emptor, and as such entered on the land in dispute for the purpose of acquiring the title thereto under the pre-emption laws of the United States, and has improved the land and continued to reside thereon ever since; that at the time of his settlement the land was and ever since has been surveyed agricultural land of the United States, and subject to pre-emption; that on the 1st day of February, 1877, he (defendant)

prepared and offered to file in the land office of the proper district his declaratory statement in due form of law, of his claim to the land, and that the register of the land office, without right refused to permit him to do so, from which decision of the register he appealed, and his appeal is still pending and undetermined before the commissioner of the general land office at Washington. This offer was excluded by the court, and defendant reserved an exception to the ruling.

This was held to be error in *Carr* v. *Quigley*, 57 Cal. 395, which cause was decided by Department One, and on petition for rehearing was approved by the court in Bank. On the authority of that case the judgment and order are reversed and cause remanded for a new trial.

Ross, J., dissenting. — I dissent. The action is ejectment for the recovery of the possession of the northeast quarter and the east half of the northwest quarter of section 19, township 4 north, of range 9 east, containing two hundred and forty acres of land.

Judgment for plaintiff. Appeal by defendant.

The statement on motion for new trial recites : —

"On the trial of the action, plaintiff offered and read in evidence, under the objection of defendant, a patent in due form of law, signed by the President of the United States, which patent recited that a grant of land had been made by the United States to the Central Pacific Railroad Company, and to the Western Pacific Railroad Company by acts of Congress in the years 1862 and 1864, and by joint resolution of Congress passed in 1865, which purported to convey the land in question; and plaintiff also offered in evidence articles of consolidation between the Central Pacific Railroad Company of California and the Western Pacific Railroad Company of California, showing that the two corporations were united under the name of the Central Pacific Railroad Company.

"The defendant objected to said patent as evidence on the grounds : —

"1st. Said land described in said patent does not appear to have been granted to said Western Pacific Railroad Company.

"2d. There was no evidence that the said Central Pacific

Railroad Company was the successor in interest of the Western Pacific Railroad Company.

"3d. There was no evidence that the land in complaint mentioned was ever granted to said Western Pacific Railroad Company or said Central Pacific Railroad Company, or to either of said companies.

"4th. There was no evidence that said Western Pacific Railroad Company ever was or now is a corporation *de facto* or *de jure.*

"The court overruled the objections and the defendant excepted.

"And plaintiff under similar objection and exception read said patent in evidence, and also a deed from said Central Pacific Railroad Company to plaintiff, purporting to convey said land to the plaintiff in this action.

"Defendant admitted that he was in possession of the land sued for in this action at the time of the commencement of the action, and has been in such possession ever since.

"It was further admitted on the part of defendant that the value of the use and occupation of said land and premises is thirty cents per acre per annum.   Plaintiff rested."

The objections to the patent were properly overruled. The patent being in due form of law, every presumption is in favor of the regularity of the proceedings preceding its issue. According to the record, it recites that the United States by acts of Congress passed in the years 1862 and 1864, and by joint resolution of Congress passed in 1865, purported to convey the land in question to the Central Pacific and Western Pacific Railroad Companies. The United States thus purporting to convey the land, *prima facie*, at least, did convey it.

The record further shows that the plaintiff introduced in evidence, without objection, articles of consolidation between the two named companies, "showing that the two corporations were united under the name of the Central Pacific Railroad Company," and followed this with the introduction of a deed from the last-named company to the plaintiff, purporting to convey to him the same land.   This made a *prima facie* case of title in plaintiff from which the right of possession of the premises followed.   But to defeat the plaintiff's recovery, the defendant offered to show that at the time of the grant by Congress to the

railroad companies, the land in question was included within the exterior limits of a tract of land claimed as a Mexican grant and known as "Moquelamos" and was therefore reserved from the railroad grant; that subsequently, to wit, December 5, 1876, he, defendant, was a qualified pre-emptor, and as such entered on the tract in dispute for the purpose of acquiring the title thereto under the pre-emption laws of the United States, and has improved the land and continued to reside thereon ever since; that at the time of his settlement the land was, and ever since has been, surveyed agricultural land of the United States, and subject to pre-emption; that on the 1st day of February, 1877, defendant prepared and offered to file in the land office of the proper district his declaratory statement in due form of law, of his claim to the land, and that the register of the land office wrongfully and unlawfully refused to permit him so to do, from which decision of the register defendant appealed, and which appeal is still pending and undetermined before the commissioner of the land office at Washington.

In the offer no reason is assigned for the refusal of the register to permit the filing of the declaratory statement, but in his answer the defendant avers that such refusal was based "on the sole ground that said pretended patent for said land had been issued by the United States."

If that be accepted as the ground, the reason was a good one, because as the patent is regular on its face, and as every presumption is in favor of the regularity of the proceedings on which it is based, the case presented to the register was one in which there was an application on the part of a pre-emptor to file a declaratory statement for a piece of land to which the government had already conveyed away all of its title by patent duly issued.

But the defendant's offer of proof did not disclose the ground on which the register refused to file the statement, nor the date of the issuance of the patent, and the plaintiff's objections to the proposed testimony, which were sustained by the court below, went principally to the point that the defendant's position was not such as entitled him to call in question the validity of the patent under which the plaintiff claimed. That position, I think, should be sustained. That the defendant has no title to

the land is obvious. When he sought to obtain it through the only channel through which it could be obtained—the land department of the government—he was met at the threshold by a refusal on the part of the government officer to permit him to take the first step in the proceedings prescribed by Congress for the acquisition of title from the government.

As already observed, the defendant's offer does not disclose the ground of that refusal. But in the absence of a showing to the contrary, we are bound to presume that the officer acted rightly—perhaps for the reason stated in the defendant's answer, that the government had already executed a patent to another party for the same land—perhaps because the defendant's declaratory statement did not show that he had ever settled on the land. But whatever the reason, the fact remains that he did refuse. In no sense is the defendant in privity with the government. Proof of his settlement and improvement of the land it was essential for him to make before *he* could be entitled to enter it; and of this proof, as we held in *Chapman* v. *Quinn*, 56 Cal. 274, "the register and receiver are the exclusive judges, subject to the supervision and control of their superior officers of the land department. The courts have no power to substitute their judgment upon the facts of the defendant's alleged settlement and improvement of the land for that of the officers to whose judgment Congress has confided the determination of those questions." So that we have here the case of a defendant who has never filed a declaratory statement, never made proof of settlement, never paid any money, never received any certificate or other recognition from the officers of the land department, seeking in an ordinary action of ejectment to attack the validity of a patent which is regular on its face, and which purports to convey the land from the government to the plaintiff's grantor. If that can be done, of what avail is the government patent?

If the proceedings on which it is based can be called in question by every stranger who chooses to enter into the possession of the land described in it, where is the security intended to be conferred by it? It is, indeed, difficult to perceive the use of such an instrument if the antecedent proceedings are open to controversy to the same extent after as before its issue.

"The object of the patent," said the court in *Doll* v. *Meador*,

16 Cal. 326, "is to give security and quiet to its holder, as to the title of the property which it purports to transfer to him; but such patent would be anything but an instrument of security and repose, if every one not in privity with the original owner of the title, but simply hoping that by some future action of the government he may possibly possess some interest in the property, could compel the patentee in every instance in which he may seek the aid of the legal tribunals, to establish the validity and regularity of the action of the officers of the State in the selection of the land, and in the issuance of the patent."

It is true that if a patent is issued without authority it may be collaterally attacked in a court of law. But this exception from the general doctrine respecting the presumptions attending such instruments is, as was held by the Supreme Court of the United States in the recent case of *The St. Louis Smelting & Refining Company* v. *Kemp*, 104 U.S. 645, "subject to the qualification, that when the authority depends upon the existence of particular facts, or upon the performance of certain antecedent acts, and it is the duty of the land department to ascertain whether the facts exist, or the acts have been performed, its determination is as conclusive of the existence of the authority against any collateral attack, as is its determination upon any other matter properly submitted to its decision."

In the case before us, the patent, as has been already observed, is in due form of law, and the land it purports to convey is within a section embraced in the railroad grant. Read, therefore, in the light of the law, or of anything of which the court must take judicial notice, it cannot be said that the patent is invalid. It is true that if the particular piece of land embraced in the patent was included within the limits of a claimed Mexican grant, it was reserved from the grant to the railroad company. (*Newhall* v. *Sanger*, 92 U. S. 761.) But upon what department of the government devolved the duty of ascertaining the fact in relation to that matter? That it was a question of fact cannot be doubted. It could only be ascertained by a survey of the premises. It was one of the facts the officers of the land department were called upon to determine before they could issue the patent to the grantee; and being one of the facts properly determinable by those officers, their deter-

mination in favor of the grantee, as evidenced by the patent, is conclusive on a collateral attack in an action at law, more especially by a stranger to the common or paramount source of title. (*The St. Louis Smelting and Refining Company* v. *Kemp, supra; French* v. *Fyan,* 93 U. S. 169; *Marquez* v. *Frisbie,* 101 U. S. 475; *United States* v. *Atherton,* 102 U. S. 372; *United States* v. *Schurz,* 102 U. S. 404; *Patterson* v. *Tatum,* 3 Sawy. 172; *Bladsoe's Devisees* v. *Well,* 4 Bibb. 329; *Alexander* v. *Greenup,* 1 Munf. 134; *Churchill* v. *Anderson,* 56 Cal. 55; *Chapman* v. *Quinn,* 56 Cal. 266.)

There is a recent case entitled *Carr* v. *Quigley,* 57 Cal. 394, decided by this court since the cases of *Churchill* v. *Anderson,* and *Chapman* v. *Quinn,* which, without noticing them, contravenes the doctrine of those cases and of the other cases cited. The cases cited by Department One (57 Cal. 395), in support of the conclusion reached by it in *Carr* v. *Quigley,* were *Doll* v. *Meador,* 16 Cal. 295, and *Newhall* v. *Sanger,* 92 U. S. 761. But a closer examination of those cases shows that neither of them sustains the conclusion reached in *Carr* v. *Quigley.*

*Doll* v. *Meador* was an action of ejectment brought to recover the possession of a lot of land in the town of Red Bluff, county of Tehama, the plaintiff basing his right to recover upon a patent issued by the State. The defense rested, as stated by the court itself (16 Cal. 320), "upon the alleged reservation of the tract embraced in the patent to the plaintiff, from location by the State, as part of the land granted to her, on the ground of its previous selection as a town site. On the trial the defendant offered to prove various facts showing its selection and survey into blocks and lots, and its settlement and occupation by citizens of the United States and of this State, as early as June, 1850, and its continued use and occupation by them as a town site, and for the purposes of trade, and not agriculture, ever since; and the possession and use of the lot in controversy by the defendants, or parties through whom they claim, for the like purpose, continuously since the original selection; also that the tract was first officially surveyed, and the survey thereof approved under the laws of the United States, and by their proper officers, on the thirty-first of March, 1855; that the tract was then designated as such town-site in the official plat of the

survey; that a certified copy of the plat was on file in the office of the receiver and register of the United States land office at Marysville, at the time of the location referred to in the patent to the plaintiff, and that no patent from the United States for the tract, or certified list embracing the same, made by the commissioner of the general land office of the United States, has ever been issued to the State. The proof offered, except as to the issuance of a patent by the United States, or a certified list by the commissioner of the general land office, was, under the objection of the plaintiff, excluded, and as to the patent and certified list the proof was held incompetent, and it is upon exceptions taken to the rulings in these respects that the defendants seek a reversal of judgment."

In *Doll* v. *Meador*, therefore, the defendants sought to show, by matters *dehors* the patent, that the disputed premises were reserved from the grant to the State because within the town site of Red Bluff, and thus to avoid the State patent; while in the case now before us the defendant seeks to show, by matters *dehors* the patent, that the disputed premises were reserved from the grant to the railroad company, because within the limits of a claimed Mexican grant, and thus to avoid the patent of the United States.

The difference, if any, in the position of the respective plaintiffs, is undoubtedly in favor of the plaintiff in the present case who claims under a patent from the United States, while the defendants in each are without title and without privity with the paramount or common source of title.

In *Doll* v. *Meador* the court distinctly decided the relation of the defendants to the title was not such as to allow them to question the validity and efficacy of the patent under which the plaintiff claimed, and concluded the opinion in these words: "Until some one appears prepared to trace title to himself from a common or paramount source, parties who are clothed with the solemn evidence of title furnished by the patent of the State may rest in security without fear of any successful disturbance in the enjoyment of the property held by them, whether that property be a portion of the school lands or swamp lands granted to the State by the general government."

In *Newhall* v. *Sanger*, 92 U. S. 761, both parties had a patent

for the disputed premises, the plaintiff claiming under a patent issued in professed compliance with the requirements of the acts of Congress commonly known as the Pacific railroad acts, and the defendant under a patent of a later date, which recited that the land was within the exterior limits of the Moquelamos grant, and that a patent had, by mistake, been issued to the railroad company. The object of the suit, which was a bill in equity, was to determine the ownership of the land.

Enough has been said to show that neither *Doll* v. *Meador* nor *Newhall* v. *Sanger* at all support the decision in *Carr* v. *Quigley*, while *Doll* v. *Meador* is really an adjudication the other way.

When the petition to have the case of *Carr* v. *Quigley* heard before the court in Bank was denied (57 Cal. 395), the refusal was based on the case of *McLaughlin* v. *Powell*, 50 Cal. 64. Yet that case does not sustain it either, for there the patent itself contained, as a part of the description, an express exception of "all mineral lands," should any be found in the tracts described in it; and the court held that parol evidence was competent to show that the demanded premises were mineral lands.

I am convinced that the cases cited in support of *Carr* v. *Quigley* do not support it; that it is opposed to the other cases cited, is wrong in principle, and therefore ought to be overruled.

In my opinion the judgment and order appealed from should be affirmed.

McKee, J., concurred in the dissenting opinion of Mr. Justice Ross.

Petition for a rehearing denied.