[In Bank.—January 30, 1884.]

SOUTHERN PACIFIC RAILROAD CO., APPELLANT, v. J. M. GARCIA, RESPONDENT.

PUBLIC LANDS—SETTLEMENT—WITHDRAWAL FROM SALE—RAILROAD GRANTS—MEXICAN GRANTS.—A settler on public lands which had been withdrawn from sale under an act of Congress to aid the construction of a railroad acquires no. rights by his settlement as against the railroad company to which a patent was subsequently issued.

ID.—Lands within the exterior boundaries of a Mexican grant are not the subject of a conveyance by the United States government, and a grant purporting to convey such lands is invalid.

ID.—PLAT AND SURVEY—PUBLICATION AND APPROVAL.—The publication and approval by the surveyor-general of a plat and survey of a Mexican grant, under the Act of June 14, 1860, has, in the absence of an application to have it returned into the District Court for examination and adjudication, the same effect and validity as if a patent had issued ; and thereafter the grant is in no sense sub judice, and is segregated from the lands lying outside of the survey.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The action was ejectment. Plaintiff claimed under a patent of the United States issued in 1876 in pursuance of the withdrawal from sale of the lands in controversy on April 13, 1871, under an act of Congress to aid in the construction of its railroad.

The defendant settled upon the land in 1873, and relied upon the pre-emption right, and claimed that plaintiff's patent was void because the lands were within the exterior limits of the Mexican grant Tajauta, at the date of the withdrawal from sale. A survey and plat of the ranch was made and approved in

September, 1860, by the surveyor-general of California, and the publication made as provided by the Act of June 14, 1860. No application was made to have the survey and plat returned into the District Court for examination and adjudication. In 1868, upon application to have this survey set aside, the surveyor-general gave instructions for a new survey, which was made.

In 1872 the secretary of the interior decided that the first survey having been finally approved under the Act of 1860, the subsequent survey and proceeding were void.

*Glassell & Smith*, for Appellant.

Upon the approval of the survey, under the Act of June 14, 1860 (which took place in 1860, many years before the railroad withdrawal), all the land excluded, if it had ever been part of the claim, ceased to be so. For the confirmation, under that act, was "equivalent to a patent," and vested the legal title in the confirmees, and was conclusive upon them and all others as to the boundaries. (Act of June 14, 1860, 10 U. S. Stats. 34; *Gates* v. *Smith*, 38 Cal. 65–70; *Geble* v. *Ford*, 20 Cal. 106.)

*H. T. Hazard*, for Respondent.

The land being under the claim of the rancho Tajauta at the date of withdrawal, the plaintiff's patent is not only voidable, but *absolutely void*. A mere citation of authorities is all that is necessary in this case. This court has held in a recent case that "the validity of a patent purporting to grant lands which the officers of the government have no authority under any circumstances, to convey, may be controverted in any action directly or collaterally. The patent is *void*, and a defendant in an action of ejectment may prove the facts showing its invalidity." (*Carr* v. *Quigley*, 57 Cal. 394; *Newhall* v. *Sanger*, 92 U. S. 761.)

Sharpstein, J.—If the demanded premises were not on the 13th day of April, 1871 (the date of the withdrawal from sale, etc., of public lands granted to the plaintiff), within the exterior boundaries of a Mexican grant (the Tajauta), the plaintiff is entitled to recover in this action; and the judgment and order appealed from must be reversed. The defendant did

not settle on this land until December 18, 1873, and if it had previously been withdrawn from sale, etc., it was not open for pre-emption, and the defendant, by virtue of said settlement, acquired no right to it as against the plaintiff. If this land at the date of said withdrawal was within the exterior boundaries of a Mexican grant, the grant to the plaintiff did not include it, and the patent which purports to convey the title to it to the plaintiff is invalid for that purpose. (*Carr* v. *Quigley,* 57 Cal. 394; *McLaughlin* v. *Heid,* 63 Cal. 208.)

It appears that the rancho Tajauta was surveyed in 1858 by Henry Hancock, deputy United States surveyor, and the survey approved on the 17th of September, 1860. At the time of such approval the Act of June 14, 1860, entitled "an act to amend an act entitled an act to define and regulate the jurisdiction of the District Courts of the United States in California in regard to the survey and location of confirmed private land claims," was in force. The act provides, "that whenever the surveyor-general of California shall in compliance with the thirteenth section of an act entitled 'an act to ascertain and settle [the] private land claims in the State of California' approved March third, eighteen hundred and fifty-one, have caused any private land claim to be surveyed, and a plat to be made thereof, he shall give notice that the same has been done, and the survey and plat approved by him, by a publication . . . . once a week for four weeks in two newspapers, one published in Los Angeles, and one of which the place of publication is nearest the land." It further provides that the District Court of that district may, upon the application of any party interested, make an order requiring such survey to be returned into said court for examination and adjudication, and if in its opinion the location and survey are erroneous, it may set aside and annul the same or correct and modify it. But if, " after publication as aforesaid, no application shall be made to the said court for the said order, or when said order has been refused, or when an order shall have been obtained as aforesaid, and when the District Court by its decree shall have finally approved said survey and location, or shall have reformed or modified the same, and determined the true location of the claim, it shall be the duty of the surveyor-general to transmit, without delay, the plat or survey of the said survey to the gen-

eral land office, and the patent for the land as surveyed shall forthwith be issued therefor, and no appeal shall be allowed from the order or decree as aforesaid of the said District Court, unless applied for within six months from the date of the decree of said District Court, but not afterwards; and the said plat and survey, so finally determined by publication, order, or decree, as the case may be, shall have the same effect and validity in law as if a patent for the land so surveyed had been issued by the United States." (12 U. S. Stats. 33.)

It does not appear that any application was made to have said location and survey returned into court, and it therefore became final; "and the said plat and survey so finally determined *by publication,*" had "the same effect and validity as if a patent for the land so surveyed had been issued by the United States." (12 U. S. Stats. 33.)

Speaking of the effect of this act the United States attorney-general said: "It is perfectly clear that this publication having been made, and no steps having been taken to invoke the jurisdiction of the District Court, the title to this land, as covered by the survey and plat vested absolutely in the claimant, and that the repeal of the statute, after the title so vested, cannot be construed to have divested that title." (12 Opin. of Atty.-Gen. 250.)

Therefore the finding that the demanded premises were within the exterior boundaries of the private grant, Tajauta, and were claimed as a part of said grant, and that said claim was pending before the land department of the United States at the date of the defendant's settlement, is not supported by the evidence.

The publication and approval of the Hancock survey, in the absence of an application to have it returned to the District Court, had the same effect and validity in law "as if a patent for the land so surveyed had been issued by the United States." After that the grant was in no sense *sub judice.* It was the duty of the surveyor-general to transmit said survey to the general land office; and of that office, to forthwith issue a patent for the land in accordance with said survey. The grant became segregated from lands lying outside of said survey. As that occurred more than ten years before the lands granted to the plaintiff were withdrawn from sale, etc., it follows that the grant to the

plaintiff attached to the demanded premises, unless the defendant had previously initiated some claim thereto. And it does not appear that he attempted to do so until about two years after the right of plaintiff had attached.

Judgment and order reversed.

MORRISON, C. J., MYRICK, J., McKINSTRY, J., and McKEE, J., concurred.

Ross, J., concurred in the judgment.