[No. 9531. In Bank. — May 1, 1889.]

WILLIAM B. CARR, APPELLANT, *v.* JOHN QUIG-LEY, RESPONDENT.

PUBLIC LANDS — RAILROAD GRANT — MEXICAN GRANT — VALIDITY OF PATENT. — A patent issued to the Central Pacific Railroad Company, as the successor in interest of the Western Pacific Railroad Company, under the acts of July 1, 1862, and July 2, 1864, for land within the exterior limits of a Mexican grant which was *sub judice* when the lands were withdrawn from entry and sale, is void as to such land, it being a "government reservation" within the meaning of the act of 1864.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial.

The action was commenced December 29, 1877, by W. B. Carr against John Quigley, to recover certain land in Alameda County, which the plaintiff claimed as grantee under a patent issued to the Central Pacific Railroad Company February 28, 1874. This patent was in confirmation of the grant of lands made by the acts of July 1, 1862, and July 2, 1864, to the Western Pacific Railroad Company, the predecessor in interest of the Central Pacific Railroad Company, and recites the exception of lands reserved from the grant. The defendant claimed the land as a qualified pre-emptor, and justified his possession by offering to show that the land in question was included in the exterior limits of the Mexican grant Las Pocitas, and was *sub judice* when the land included in the railroad grant was withdrawn from entry. The sufficiency of this defense was sustained upon the former appeal of this case. (57 Cal. 394.) Upon the new trial, the evidence showed that the state of facts offered to be proved upon the first trial actually existed; that no final survey was approved so as definitely to fix the rights of the claimants of the grant until 1871; and that the land sued for was not embraced in the tract as finally surveyed.

*Shafter, Parker, & Waterman,* for Appellant.

*Mich. Mullany,* for Respondent.

THORNTON, J.— We regard the contention of appellant, Carr, in this case as settled by the decision of the supreme court of the United States in *Doolan* v. *Carr,* 125 U. S. 618, and by the decisions of this court made prior to the judgment in *Doolan* v. *Carr,* viz., *Carr* v. *Quigley,* 57 Cal. 394, and *McLaughlin* v. *Heid,* 63 Cal. 208.)

The same points were presented in *Doolan* v. *Carr* that are presented in this case, and with reference to the same Mexican grant of Las Pocitas. The only difference is, that in *Doolan* v. *Carr* the points arose and were presented on an offer of testimony, and here they arise on the proof of the facts, which Doolan offered to prove in his suit against Carr.

In our judgment, there is no error in the record, and the judgment and order must be affirmed.

So ordered.

SHARPSTEIN, J., McFARLAND, J., and WORKS, J., concurred.

BEATTY, C. J., concurring.— I concur in the judgment of affirmance upon the sole ground that what is here decided has become, by virtue of the decision on the former appeal (57 Cal. 394), so far as this court is concerned, the law of the case.

PATERSON, J., dissenting.—*Doolan* v. *Carr*, cited by Mr. Justice Thornton, seems upon its face to be decisive of this case, and, were it not for other and more recent decisions of the national courts, I should entertain no doubt that the contention of appellant herein had been settled by the decision in the first case above named.

In *United States* v. *McLaughlin*, 127 U. S. 428, the supreme court of the United States considered the different kinds of Mexican grants, and reviewed at length the case of *Newhall* v. *Sanger*, 92 U. S. 761, and *Leavenworth R. R. Co.* v. *United States*, 92 U. S. 743, upon which *Doolan* v. *Carr* was largely based. The court there held that "grants of quantity, as of one or more leagues within a larger tract, described by what are called 'outside boundaries,' are floats, to be located by the consent of the government before they can attach to any specific land, like the land warrants of the United States; and that in the case of floating grants it

was only 'the quantity actually granted' which was re-
served during the examination of the validity of the
grant; the remainder was at the disposal of the govern-
ment as a part of the public domain. If within the
boundaries of a land grant made in aid of a railroad,
such land grant would take effect, except as to the quan-
tity of land or float actually granted in the Mexican
grant. If that quantity lying together was left to sat-
isfy the grant, the railroad company would be entitled
to patents for the odd sections of the remainder. . . . .
The government [Mexican] retained the right of locat-
ing the quantity granted in such part of the larger tract
described as was fit, and the government of the United
States succeeded to the same right; hence the govern-
ment might dispose of any specific tracts within the ex-
terior limits of the grant, leaving a sufficient quantity to
satisfy the float. . . . . There is really nothing in the
.decision of *Newhall* v. *Sanger* in conflict with the views
here expressed; but the court did not have before it the
case of a float grant."

It seems to me that Las Pocitas must be regarded as a
"float" within the meaning of that term as used in the
decisions. The grant by the Mexican government to
Livermore was of a certain tract of land known by the
name of "Las Pocitas," designated and described as fol-
lows: "Bounded on the north by the Lomas de las
Cuevas; on the east by the Sierra de Buenos Ayres;
on the south by the dividing line of the establishment
of San José; and on the west by the rancho of Don José
Dolores Pacheco; containing in all two square leagues,
a little more or less, provided that the quantity be con-
tained within the said boundaries, and if less than that
quantity be found to be contained therein, then that
less quantity and all of said described tract of land."
In an official letter to the register and receiver of the
San Francisco land-office, dated May 3, 1873, Hon.
Willis Drummond, commissioner of the United States

land-office, referring to the description of land in the grant, says: "This grant recites that 'whereas Don José Noriega and Robert Livermore have petitioned, for their own great benefit and that of their families, the place known by the name of Las Pocitas, which is in the Willow Grove de la Agua, so far as the mountain range of Buenos Ayres and the hills of Las Cuevas,' I have thought proper to grant them said place. The land of which donation is made is of two leagues, a little more or less, as the *diseño*, annexed to the proceedings with its respective limits, explains. *The judge who shall give possession will give the same to be measured agreeably to ordinance in marking the boundaries, leaving the excess which might result to the nation for such uses as may be deemed convenient.*" "The grant, being a part of the Mexican archives, is a public document of which we take notice." (*Byrne* v. *Alas*, 74 Cal. 637.)

The grant has always been treated as a float. It was so considered by Livermore himself, the donee. It has been so treated by the land officers, by the courts, and by all persons interested in a determination of its location and boundaries. It has never been contended by any one, as I understand it, that the grant was for all the land contained within the natural "outside boundaries" of the *diseno* mentioned in the grant. The land in controversy is within the outside boundaries, but is not included in the tract finally set off, patented to, and accepted by the donees named in the grant. It is therefore the same in character as that which was under consideration in *United States* v. *McLaughlin*, *supra*. Counsel for respondent contends that the only question before the court in *United States* v. *McLaughlin* was as to the eastern boundary line of the grant. In this I think he is mistaken. After finding that the grant did not extend east of the Jack Tone road, or the edge of the hills commencing near the same, the court said: "This result would dispose of the present case with regard to

nearly all the land in question; but as some of it lies
west of said road in range 7, and as the railroad grant
extends to the west of said road, it will be necessary to
examine the other question referred to, namely, if the
lands in controversy did lie within the exterior limits of
the Moquelamos grant, and if the title of the railroad
company did accrue whilst that grant was under consid-
eration in the courts, did those facts prevent the railroad
grant from taking effect?" And the court there decided
that in the case of floating grants "it was only the quan-
tity *actually granted* which was reserved during the ex-
amination of the validity of the grant; the remainder
was at the disposal of the government as part of the
public domain"; that if there was left sufficient to satisfy
the grant, "the railroad company would be entitled to
patents for the odd sections of the remainder"; that "if
the government has the right to say where it [the grant]
shall be located, it certainly has the right to say where
it shall not be located, and if it sells land to a third per-
son at a place within the general territory of the origi-
nal grant, it is equivalent to saying that the quantity
due to the original grantee is not to be located there.
In other words, if the territory comprehended in the
outside limits and bounds of a Mexican grant contains
eighty leagues, the government may dispose of seventy
leagues without doing any wrong to the original gran-
tee."

The case before us is one which may, and probably
will, go to the supreme court of the United States; there-
fore, the decision of that court is binding and conclusive
upon us on the questions which have been decided by it.

I am led to the conclusion that the supreme court of
the United States, when this case is presented to it as
fully as it is presented here, —that is, upon the evidence,
and not upon a broad and sweeping offer, as was the
case of *Doolan* v. *Carr*,— will hold that the Las Pocitas
is a "float," by a decision of the circuit court of the

United States for the northern district of California, in United States v. *Curtner*, decided February 4, 1889. In that case it was held that the Las Pocitas was a "float": that "the railroad company, by the acts of 1862 and 1864, had a valid grant to every odd section of land within twenty miles on each side of the road, and within the exterior bounds of the Las Pocitas grant, not embraced within two leagues, as it was finally located, and not reserved," etc.; that the decision in *Newhall* v. *Sanger* has been materially limited in its operation by the recent decision in *United States* v. *McLaughlin*.

In this decision of the circuit court Mr. Justice Field, who participated and acquiesced in the decisions in *Doolan* v. *Carr* and *United States* v. *McLaughlin*, concurred.

It seems to me quite clear either that the record in *Doolan* v. *Carr* was not such as to indicate the true character of the Las Pocitas grant, — that the offer of proof made therein was too broad to present the question whether the grant was in fact a float, — or that that question was overlooked or not presented for the consideration of the court therein.

In view of the decisions of the national courts in *United States* v. *McLaughlin* and *United States* v. *Curtner, supra,* I do not think that the decision of this cause on the former appeal can be regarded as the "law of the case." It is useless to apply a rule of decision which will not be regarded by the higher tribural. (*Belcher* v. *Chambers,* 53 Cal. 635.)

I think, therefore, that the judgment aid order should be reversed.