# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 5, 2007   Decided December 14, 2007

No. 06-1174

XCEL ENERGY SERVICES INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Floyd L. Norton, IV* argued the cause for petitioner. With him on the briefs were *Heath K. Knakmuhs* and *William M. Dudley*.

*Carol J. Banta*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *John S. Moot*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: GARLAND and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Section 205 of the Federal Power Act, 16 U.S.C. § 824d, and FERC regulations, 18 C.F.R. § 35.3, require that utilities provide 60 days prior notice to the Federal Regulatory Energy Commission before a rate takes effect. FERC may waive that requirement, however, "for good cause shown." *Id.* at § 35.11. Xcel Energy Services, Inc. challenges FERC's decision not to waive the prior notice requirement for four interconnection agreements that Xcel filed more than four years after the effective date chosen by the parties. Xcel's challenge to the ruling on one of the four agreements fails for want of standing; as to the other three, we find FERC's decision neither arbitrary nor capricious.

\* \* \*

Four interconnection agreements are at issue here, but the four share origins with a fifth, on which the four disputed ones pivot. Public Service Company of Colorado—an affiliate of Xcel (and, for simplicity's sake, also referred to here as "Xcel")—conducted a competitive bidding process that resulted in power purchase agreements and five interconnection agreements with four companies. Xcel entered into all five interconnection agreements at various times between January 26, 2001 and October 26, 2001. Xcel filed an agreement with Plains End, LLC—the one of the five that is not directly at issue here—on August 22, 2001, but a dispute arose between the two over the calculation of the facilities charge as set forth in the agreement. See *Xcel Energy Servs., Inc.*, 100 FERC ¶ 61,267 at 62,016 P 9 (2002). FERC conditionally accepted the Plains End agreement on September 13, 2002, made it effective as of August 23, 2001, and held the facilities charge dispute in abeyance in order to permit settlement negotiations between the parties. *Id.* at 62,019 P 33. The parties reached an agreement on March 12,

2004, which FERC accepted on May 27, 2004. See *Xcel Energy Servs., Inc.*, 107 FERC ¶ 61,198 (2004).

Of the four remaining transactions, an agreement was initially filed for one in July 2001 (an agreement with Fountain Valley Power, LLC), providing for a charge of about $31,000 a month. FERC accepted it and granted a waiver allowing a retroactive date of February 21, 2001. Agreements for the remaining three transactions—two with Black Hills Colorado, LLC, and another with BIV Generation Co., LLC—were also signed in 2001 but not filed with FERC. For about three of the next four years, service proceeded while the parties awaited resolution of the Xcel-Plains End dispute. As we have seen, that wrapped up in March 2004 and FERC accepted the result in May.

Just shy of a year-and-a-half later, on November 14, 2005, Xcel filed the four "Amended and Restated" interconnection agreements now at issue. Each new agreement provided for a new facilities charge calculated pursuant to the terms of the Plains End settlement agreement. We note, and will return to the point later, that the Fountain Valley agreement filed in 2005 provided for a charge of about $6500 a month; the new rate represented about an 80% reduction from the prior filing, presumably due to the influence of the Plains End settlement. Xcel requested waiver of the 60-day prior notice requirement, asking that each agreement be effective as of the 2001 date of the initial interconnection agreements. FERC declined to waive the prior notice requirement and instead accepted the four interconnection agreements with an effective date of January 13, 2006. *Xcel Energy Servs., Inc.*, Letter Order, Docket Nos. ER06-207-000, ER06-208-000. ER06-209-000, ER06-210-000 (Dec. 23, 2005).

Xcel requested rehearing.  In an order denying rehearing, FERC found that Xcel had failed to show either that the agreements fit within the narrow situations in which it was willing to grant waiver as a matter of course, or that there were "extraordinary circumstances" justifying waiver.  *Xcel Energy Servs. Inc.*, 114 FERC ¶ 61,295 at 62,048 P 9 (2006) ("*Order Denying Reh'g*").  FERC explicitly rejected the idea that the multi-year provision of service under unfiled agreements, while the parties awaited resolution of the Plains End matter, presented extraordinary circumstances.  *Id.*  This petition followed.

* * *

*Standing*.  Before we can reach the substance of Xcel's petition for review, we must address two issues related to its standing.

Xcel describes a financial arrangement underlying all four interconnection agreements that seems—at least at first glance—somewhat odd.  Those interconnection agreements provide for Xcel to collect monthly facilities charges from its counterparts, but power purchase agreements between the parties require Xcel to reimburse its counterparts for those charges in the same amount.  Thus it would seem that what Xcel takes it then gives away, resulting in a net gain of nothing (or, more important for our purposes, a loss of nothing from FERC's decision not to waive the prior notice requirement).  But Xcel explains that this odd arrangement is in fact a stepping stone to a financial recovery: collection and reimbursement are a predicate to Xcel's recovering the amounts of its reimbursements from its retail customers.  So while the net effect between Xcel and its counterparts is zero, Xcel's net injury is not.  As a direct effect of FERC's refusal to waive the prior notice requirement and permit an earlier

effective date for these agreements, Xcel cannot recover those amounts from its retail customers. FERC offers nothing to contradict this analysis. Thus Xcel has an injury-in-fact—except as to one agreement.

As to the fourth agreement the math fails. Xcel admits that one of its interconnection agreements with Black Hills Colorado, one related to the Valmont Generating Facility, establishes a $0 monthly facilities charge. Because Xcel collects nothing, it also reimburses nothing, so the agreement gives it no ability to recover any amounts from retail customers. Xcel essentially concedes that FERC's decision not to waive the prior notice requirement for this agreement caused it no harm, but it nonetheless asks that we review the decision simply because FERC addressed this interconnection agreement in the same orders in which it addressed the others. That coincidence provides no substitute for injury-in-fact, and thus we dismiss the petition for review for lack of subject-matter jurisdiction insofar as it challenges FERC's orders in Docket No. ER06-208.

*Merits*. The filing and prior notice requirements of section 205 of the Federal Power Act, 16 U.S.C. § 824d, and FERC regulations, 18 C.F.R. § 35.3, provide FERC with timely information from which it can "monitor[] the reasonableness of prices and undue discrimination in the marketplace" and "assist the public in filing complaints" by providing it with "good information about energy transactions." *Revised Public Utility Filing Requirements*, 99 FERC ¶ 61,107 P 46 (2002). The interconnection agreements at issue here should have been filed with FERC not less than 60 days before going into effect, but FERC can waive that prior notice requirement "[u]pon application and for good cause shown." 18 C.F.R. § 35.11. Xcel argues that it was entitled to a waiver under existing precedent.

In a matter decided well before the transactions here, *Central Hudson Gas & Elec. Corp.*, 60 FERC ¶ 61,106, *reh'g denied*, 61 FERC ¶ 61,089 (1992), FERC reconsidered and explained its policy towards waiver of the 60-day prior notice requirement. FERC stated that it would generally grant waivers for: (1) "uncontested filings that do not change rates," (2) "filings that reduce rates and charges," and (3) "filings that increase rates when the rate change and the effective date are prescribed by contract." *Id.* at 61338. But "absent a strong showing of good cause" FERC would "deny requests for waiver of notice for rate increases that do not implement a contract requirement." *Id.* at 61339.

For filings that provide for *new* service, as here, *Central Hudson* gives great weight to whether the agreement was filed before or after the commencement of that service. If the agreement was filed prior to the commencement of service FERC will grant a waiver "if good cause is shown," but if an agreement was filed on or after the day service has commenced, FERC will not grant a waiver "[a]bsent extraordinary circumstances." *Id.* A year after *Central Hudson*, FERC decided to eliminate the extraordinary circumstances test "for waiver for the filing of service agreements under umbrella tariffs" and to grant waiver of notice "if service agreements are filed within 30 days after service commences." *Prior Notice and Filing Requirements Under Part II of the Federal Power Act*, 64 FERC ¶ 61,139 at 61984, *order on reh'g*, 65 FERC ¶ 61,081 (1993) ("*Prior Notice*"). FERC expressly reaffirmed, however, that it would "not relax the 'extraordinary circumstances' standard of waiver for any other type of agreement for new service." *Id.*

Xcel claims that the monthly access charges reflected in the late-filed interconnection agreements hinged on the negotiations and eventual settlement between Xcel and Plains End, and that therefore extraordinary circumstances existed:

earlier filing would have merely resulted in more time-consuming dispute resolution at the expense of FERC resources. Further, Xcel invokes the value of private contracts; the parties have agreed to an effective date in each of the interconnection agreements, and Xcel reasons that FERC's refusal to grant waivers under such circumstances conflicts with precedents—FERC's, ours, and the Supreme Court's (the *Mobile-Sierra* doctrine, see *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332 (1956))—that favor enforcement of contractual commitments.

"Our review of the Commission's waiver rulings is 'quite limited,' as 'Congress, through § 205, has clearly delegated waiver discretion to the Commission and not to the Courts." *NSTAR Elec. & Gas Corp. v. FERC*, 481 F.3d 794, 799 (D.C. Cir. 2007) (quoting *City of Girard v. FERC*, 790 F.2d 919, 925 (D.C. Cir. 1986)). Since Xcel could readily have filed all four disputed agreements pending the outcome of the Plains End negotiations (or agency and court proceedings if necessary), it seems far from arbitrary for the Commission to find that the pendency of those discussions, and the parties' apparent intent to use their outcome as a model, were not extraordinary circumstances.

This is all the more evident from the strange case of Xcel's agreements with Fountain Valley. Xcel *did* file the initial agreement in that case; the rates contained in the amended agreement, which FERC refused to make retroactive, included rates about 80% lower than those in the initial filing. So a simple mechanism for handling the parties' problem was obviously available.

As to Fountain Valley, of course, the amended agreement appears to fit within the second of *Central Hudson*'s examples of waivers that are granted readily—"filings that reduce rates and charges." In its reply brief, Xcel claims for the first time

that FERC should have considered waiver of the prior notice requirement for its amended Fountain Valley agreement under that relaxed standard. (Xcel's Reply Br. 16). Xcel has twice waived this argument, *Consol. Edison Co. of N.Y. v. FERC*, 347 F.3d 964, 970 (D.C. Cir. 2003), by failing to present it to FERC as required by § 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), and by failing to raise it in its opening brief here, see *Power Co. of Am. v. FERC*, 245 F.3d 839, 845 (D.C. Cir. 2001). We are perplexed at the net result of FERC's delaying the filing of a rate-reducing amended agreement, but Xcel's quest for review suggests strongly that the initial filing at the far higher rate yielded no revenue that Xcel has been able to keep. In any event, we have no jurisdiction over the matter.

Perhaps recognizing the weakness of its efforts to fit its claim within the precepts of *Central Hudson* or *Prior Notice*, Xcel points us to cases that predate *Central Hudson*. See *City of Holyoke Gas & Elec. Dep't v. FERC*, 954 F.2d 740 (D.C. Cir. 1992); *City of Girard*, 790 F.2d 919; *City of Piqua v. FERC*, 610 F.2d 950 (D.C. Cir. 1979). We are uncertain whether these cases provide much support for Xcel's claims, and in any event we don't see how any such support survives the express reconsideration and restatement of FERC policy in *Central Hudson* and *Prior Notice*.

Finally, we have no jurisdiction to address Xcel's separate argument that FERC's decision not to waive the prior notice requirement imposed a penalty that departed dramatically from agency precedent. In *Prior Notice*, FERC determined that "if waiver is denied and [a proposed just and reasonable] rate goes into effect after service has commenced, we will require the utility to refund to its customers the time value of the revenues collected . . . for the entire period that the rate was collected without Commission authorization." 64 FERC ¶ 61,139 at 61979 (footnote omitted). Because Xcel

never collected charges under its late-filed agreements, however, it argues that FERC's decision not to waive the prior notice requirement has effectively deprived Xcel of the ability to collect those charges at all—a greater penalty than mere refund of the time value of those charges. But this is an argument that Xcel needed to urge first before FERC, and Xcel's failure to raise the objection in an application for rehearing deprives us of jurisdiction under § 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b). See also *Pub. Serv. Elec. & Gas Co. v. FERC*, 485 F.3d 1164, 1169-70 (D.C. Cir. 2007).

\* \* \*

As to the Black Hills Colorado agreement relating to the Valmont facility, we dismiss the petition for lack of standing. As to the other three disputed agreements, we uphold FERC's orders and deny Xcel's petition for review.

*So ordered.*